J. W. CROWDER, Appellant, v. V. G. PHILIPS, *et al.*, Appellees.

1 So. (2nd) 629
En Banc
Opinion Filed January 10, 1941
On Rehearing April 15, 1941

*Lewis W. Petteway,* for Appellant;

*J. Lewis Hall,* for Appellees.

TERRELL, C. J.—The Legislature of 1939 enacted Chapter 19939, Laws of Florida, creating Leon County Hospital Tax Disrtict hereafter designated as district, the boundaries of which coincide with those of Leon County. The district was placed under the management of a board of trustees and was authorized to construct, maintain, and operate a hospital, to issue and sell bonds therefor, to impose taxes on all real and personal property, to service said

bonds, and to purchase any privately owned hospital which has been operating in the district for more than ten years.

In April, 1940, the board of trustees adopted a resolution imposing a tax of two mills on the dollar on all real and personal property in the district for the year 1940, to pay the expenses incurred executing the provisions of the Act.

At this juncture, the appellant as complainant tendered his bill of complaint praying that the board of county commissioners be restrained, (1) from defraying the expenses of any bond election proposed by the hospital district, (2) from levying, assessing, or collecting the two-mill tax imposed by the trustees of the district, (3) and that the trustees be enjoined from calling or holding any election to issue bonds for the purposes of the said district, (4) from offering to purchase any hospital now being operated in Leon County, and for other relief. A motion to dismiss was overruled and on final hearing, the chancellor enjoined the levying of the tax for or paying the expense of the bond election from any other fund but denied all other relief prayed for. This appeal is from that decree.

The chancellor was correct in restraining the tax. The other questions arising from this controversy as argued in the briefs grow out of the status of homesteads under Chapter 19939 and may be comprehended in that part of the final decree denying other prayers of the bill. The first question is whether or not homesteads may be taxed for the purpose of constructing, operating, and maintaining a hospital in the district as the Act provides?

Section 7 of Article X of the Constitution as adopted in 1934 exempts homesteads to the value of $5,000 or less from all taxes except "special assessments for benefits." As amended in 1938, the same provision amplifies the homestead as to ownership and exempts it in a like amount from all taxes except "assessments for special benefits."

It is not necessary to indulge in any refinement about the distinction between "special assessments for benefits" and "assessments for special benefits" as employed in the two amendments. The direct point with which we are concerned here is whether or not the tax imposed by Chapter 19939 is an "assessment for special benefits." If it is not in the latter class, then it is a burden from which homesteads are relieved. Special benefits are such as derive from special assessments and are so treated by the law writers, so for the purpose of this case, we regard "assessments for special benefits" and special assessments as synonymous.

Chapter 19939 authorizes the board of trustees to borrow money and issue bonds to establish a hospital and to impose a tax on all real and personal property, not exceeding five mills on the dollar to pay the interest and to provide a sinking fund to retire said bonds as they mature. It also authorizes the trustees to impose a tax of not exceeding eight mills on the dollar of all real and personal property in the district for the purpose of constructing, operating and maintaining the hospital so established.

In either event, the tax imposed to service the bonds is an ad valorem tax on all real and personal property based on assessed value, without reference to benefits general or special. It would be idle to contend that a hospital located in Tallahassee and paid for by the taxpayers would not be a benefit to some sectors of the public but such benefits would have no reference to any particular parcel of land. As to the public, they would be indirect or contingent and possibly remote.

"Assessments for special benefits" or special assessments are peculiar to the premises benefitted by some local improvement, such as paving, draining, or grading. They are direct, proximate, and reasonably certain of computation and must add something to the use or sale value of the

premises benefitted above the ordinary value. They are measured by the acre, the front foot, or by some other convenient unit of computation; they arise from public improvements to private property and are clearly distinguished from the benefits to the public resulting generally from such improvement.

Measured by this criterion, we fail to find a single element in the tax brought in question to list it as an "assessment for special benefits." It is not shown that it will materially affect the value of a single parcel of land within the district. In fact, we fail to find a single attribute of a special assessment in it and being so, is a tax that the Constitution relieves the homestead from paying.

May the owner of a homestead vote in an election called and held under Chapter 19939 for the purpose of determining whether or not the district may issue bonds to establish, construct, and support a hospital?

Chapter 19939 limits the right to vote in such elections to freeholders. Section 457 (14) Permanent Supplement, Volume I, Compiled General Laws of Florida, defines a freeholder as any person who has an immediate beneficial ownership interest, legal or equitable, in the title to a fee simple estate in land. Absent the effect of the exemption, this definition embraces owners of homesteads and would settle the point.

But bond elections of this character are controlled by Section 6, Article IX of the Constitution, which in substance provides that all counties, districts, and municipalities may issue bonds only on the approval of the majority of the freeholders who are qualified electors. From the very nature and circumstances actuating this provision, freeholders as contemplated therein had reference to those who would be required to bear a just proportion of the tax burden undertaken if the bond election results in an affirmative vote.

If one is a freeholder by virtue of the fact that he is the owner of an exempt homestead and is thereby relieved of the tax to support the bonds that may be voted then he is in the same class as electors who are not freeholders, and likewise should not be permitted to vote in bond elections controlled by Section 6, Article IX, of the Constitution. This provision was a part of the Constitution when the homestead amendment was adopted and the latter contains no express or implied repeal of the former.

This is a practical interpretation but this Court has repeatedly held that constitutional validity will be measured by practical operation and effect. It is perfectly competent by constitutional or statutory provision to designate and exempt limited portions of the homestead from taxation but such provisions must be construed to make them workable and synchronize with other provisions affecting the like subject, if possible. In either event, they will not be construed so as to be arbitrary or discriminatory or in violation of equal protection. The interpretation proposed avoids all these consequences; any other imposes on one class of taxpayers an intolerable burden to benefit another.

This Court has approved the doctrine that impositions for local public improvements must not arbitrarily deny equal protection of organic law. Martin v. Dade Muck Land Company, 95 Fla. 530, 116 So. 449. In Leon County, there are approximately 3000 homesteads, less than a dozen of which are valued at more than $5,000. Some of the holders own other properties that would constitute them freeholders as contemplated by Section 6, Article IX, but most of them do not and are therefore tax exempt. To hold so large a group of electors thus situated to be eligible to participate in a bond election and vote themselves a hospital costing hundreds of thousands of dollars in addition to other large amounts annually for its support and impose the entire bur-

den on nonexempt properties is contrary to every instinct of justice and fair play. It makes a mockery of equal protection, it expunges justice from the lexicon of democracy and nips the brains from equality before the law.

In this holding, we are not unmindful of Lersch v. Board of Public Instruction, Orange County, 121 Fla. 621, 164 So. 281, where we held that homestead freeholders could vote in a special tax school district bond election. In that case, the election was controlled by Section 10, Article XII of the Constitution and applicable statutes while in this case, the bond election is controlled by Section 6, Article IX of the Constitution and applicable statutes, the controlling provisions in each case being materially different and the factual consequences being entirely different.

In Lersch v. Board of Public Instruction, Orange County, we were dealing with a school district in the nature of a governmental entity organized under the Constitution, the obligation having been undertaken before the homestead amendment was approved. A tax for the support of such a district will be upheld on a showing of general benefits, there being no clear violation of equality and equal protection; but here we are dealing with a special tax district organized by statute. A tax for the support of such a district will not be upheld except on direct and positive showing of special benefit to the property assessed. A like situation was true with respect to State *ex rel.* Ginsburg, *et al.*, v. Dreka, *et al.*, 135 Fla. 463, 185 So. 616, so neither of these cases rule the present situation.

A special taxing district like this is in a different situation with reference to tax status from a governmental entity against which taxes for benefits are imposed. This case is, in other words, governed by Consolidated Land Company, *et al.*, v. Tyler, *et al.*, 88 Fla. 14, 101 So. 280, and that line of cases, wherein we held that property in a taxing district

cannot be lawfully burdened for a public improvement if for any reason the burden discriminates between different properties of the district and is without compensating benefits or advantages.

Benefits derived from a hospital are by their very nature individual and before a general tax to support such an institution will be upheld, it must be shown that the hospital has some direct relation to the special benefits derived from the tax. If it is shown that there are properties of considerable area or value or groups of individuals that will receive no special benefit from such an instrumentality, the tax will not be upheld as to them.

Section 7 of Chapter 19939 is challenged on the ground that it authorizes the board of trustees to borrow money, execute the interest-bearing notes and pledge as security therefor certain properties held by the district without an approving vote of the freeholders. It further provides that such notes shall not constitute bonds nor shall the taxing power of the district be pledged to support or secure them.

This section is clearly violative of Section 6, Article IX, of the Constitution in that it authorizes the district to issue notes which are the equivalent of bonds without an approving vote of the freeholders. To say that such notes shall not be bonds is little short of attempting a species of legerdemain that courts and legislatures are devoid of power to practice. Neither are they, like Aladdin of the Arabian Nights, possessed of a magic touch by which they can make a wish and call forth a jinni to convert it into a reality. It would have been just as effective to attempt a change in the law of gravitation, the decalog, or to transmute a turkey buzzard into a turkey gobbler by legislative fiat.

Other questions raised have been considered but a decision of them or a discussion of their merits is not necessary at this time.

436

Affirmed in part, reversed in part.

Whitfield and Chapman, J. J., concur.

Brown, J., concurs specially.

Buford, J., dissents to judgment.

Justice Adams not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

Whitfield, J. (concurring with Terrell, C. J.).—Chapter 19939, Acts of 1939, creates and incorporates a "Special Tax District" covering the same area as Leon County; and it provides for a board of trustees with corporate authority to levy ad valorem taxes on "all the real and personal taxable property in said district." Sec. 15. The district is formed, not for a governmental purpose, but for the construction and maintenance of such hospital or hospitals in the district as the board of trustees may determine for the preservation of the public health and "welfare of said district and the inhabitants thereof." Special tax districts, except for schools, are not specifically provided for in the Constitution. Such districts can be sustained as taxing units only for the corporate purpose of providing facilities or improvements that afford special benefits to the property or persons liable for the tax. The "special tax district" is not a county or a municipality with taxing and governmental authority provided for by the Constitution.

The facts alleged to show illegality of the statute are admitted by the motion to dismiss.

The levy is designated "a tax." Being an ad valorem real and personal property tax, and not for a governmental purpose, or for a county or municipal purpose, but for a special district corporate purpose, it must be predicated upon special but not necessarily equal benefits to all the property assessed or to its owners, and without unjust discrimination.

Under the Constitution the statute cannot give the special tax district general taxing authority, but only special taxing authority for special benefits. In this case the tax levies are to be upon valuations and assessments made for governmental purposes, and not for special benefits.

Section 5 of the Act is as follows:

"Said board of trustees is hereby authorized and empowered to establish, construct, operate and maintain such hospital, or hospitals as in their opinion shall be necessary for the use of the people of said district. Said hospital, or hospitals, shall be established, constructed, operated and maintained by said board of trustees for the preservation of the public health, and for the public good, and for the use of the public of said district; and the construction and maintenance of such hospital, or hospitals, within said district, is hereby found and declared to be a public purpose and necessary for the preservation of the public health and for the public use, and for the welfare of said district and inhabitants thereof. The location of such hospital, or hospitals, shall be determined by said board of trustees."

The above provisions do not indicate that the Legislature has determined that all or substantially all of the areas included in the "special tax district" will be specially benefitted by the authorized corporate project, even if that would be conclusive against judicial inquiry by appropriate proceedings in this class of cases. The statute does not levy the tax, but delegates that authority to statutory district officials who have no governmental or police authority but only district corporate authority.

In view of the very limited taxing authority that can be conferred upon a statutory "special tax district" formed for such a corporate enterprise as in this case, the areas and owners of property taxed must be only those that may reasonably be *specially* but not necessarily equally benefitted

by the facility. The construction and maintenance of hospitals merely for a *corporate public health purpose and for the general welfare of the district,* without special benefits for taxes that the statute attempts to authorize. The purpose of the "special tax district" is to provide a facility for district corporate uses; and though the tax which may be imposed for the corporate facility must be in its nature a special assessment for benefits the tax provision of the Act having no relation to special benefits, is invalid.

The Constitution does not exempt homesteads from valid assessments for special benefits. Amended Sec. 7, Art. X, Constitution. State v. Dreka, 135 Fla. 463, 185 So. 616.

In Houck v. Little River District, 239 U. S. 254, 265, it is stated:

"When local improvements may be deemed to result in special benefits, a further classification may be made and special assessments imposed accordingly, but even in such case there is no requirement of the Federal Constitution that for every payment there must be an *equal* benefit. The State in its discretion may levy such assessments in proportion to position, frontage, area, market value, or to benefits estimated by commissioners."

TERRELL, C. J., BROWN and CHAPMAN, J. J., concur.

BROWN, J. (concurring).—This special Act does not deal with a project which confers any special benefits upon any particular property, and I agree with Mr. Chief Justice TERRELL and Mr. Justice WHITFIELD that the tax authorized by the Act to be imposed cannot be upheld on the theory that it is an assessment for special benefits to real or personal property. A county hospital may, as we have held, be made a county purpose by legislative Act, and if so the county commissioners may be authorized to levy an ad valorem tax to provide for its construction and operation.

This would be in keeping with the command of Art. XIII, Section 3, of our Constitution. But here, in this Act, we have an effort to make a county project a district project, and to invest the district officers with the character of taxing powers that under the Constitution can only be imposed by the duly authorized constitutional county officers.

TERRELL, C. J., concurs.

BUFORD (dissenting).—I am unable to concur in some of the views expressed in the majority opinion.

It is my opinion that a freeholder is one who holds the immediate beneficial ownership interest, legal or equitable, in the fee simple title to real estate, regardless of the character of the real estate and that, therefore, the fee simple owner of a homestead is a freeholder, although such homestead real estate is by the terms of the Constitution exempt from taxation.

Section 6, Article IX, of the Constitution, *inter alia,* provides:

"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the counties, districts or municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes càst in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts or municipalities shall participate."

This is the supreme law of the land solemnly adopted by the people. The language of the Constitution does not limit the duty to vote in bonds elections to those qualified electors who are "taxpaying" freeholders, but it provides that a majority of the freeholders who are qualified electors must participate in the election, or else the election is of no avail.

440

See Lersch v. Board of Public Instruction of the County of Orange, 121 Fla. 621, 164 Sou. 281, where we said:

"The mere fact that a freeholder has his homestead exempt to the value of $5,000.00 in nowise changes his status as a 'freeholder' and being so would not affect his right to vote in such elections."

It is of no moment that we may think to allow non-taxpaying freeholders to participate in such election is unfair. The Constitution is clear and courts are bound to follow its provisions.

## ON REHEARING

THOMAS, J.—It will be the purpose of this opinion to consolidate five others originally prepared in this cause and give the consensus of the court on the principal question involved, together with a brief statement of the attitude of a member of the court on an allied subject.

The Act under consideration in this litigation (Chapter 19939, Laws of Florida, Special Acts of 1939) is one providing for the construction and operation of a hospital in a district coextensive with Leon County. The plan outlined contemplates that the hospital district be governed by a board of nine trustees appointed by the Governor of the State of Florida. The Legislature recommended that they be selected from persons nominated by certain organizations of the City of Tallahassee and of the County of Leon. This board is authorized to establish and maintain hospitals at places selected by it.

Powers given the board include: acquisition of the property by eminent domain; incurrence of debt under certain conditions; issuance of bonds, in a limited amount, after approval of a majority of the votes cast in an election in which a majority of the freeholders must participate; and expenditure of the proceeds in furtherance of the purposes

of the Act. It is made the duty of the board to assess and levy against taxable property within the district a tax not exceeding "eight mills on the dollar" for maintenance and repair of hospitals and authority is given to levy not more than five mills for a sinking fund to retire the bonded debt.

This summary is sufficient to a comprehension of the charge that the Act violates the organic law.

Mr. Justice TERRELL holds the conviction that persons owning homestead property which is exempt from taxation (Section 6, Article IV, of the Constitution of Florida) may not qualify as freeholders to vote in elections held for the purpose of determining whether bonds should be issued because they would thus be enabled to place the burden of paying the indebtedness upon others who own taxable property while they, meanwhile, would reap the benefit and escape responsibility for the debt.

Although this view is not concurred in by the other members of the Court, a majority of them are in accord on the principal question involved, namely, the unconstitutionality of the Act.

It is clear that the tax to be imposed under the provisions of the law under attack is ad valorem on all real and personal property as distinguished from assessments for special benefits to the real property located in the district. That a hospital is a distinct advantage to the entire community because of its availability to any person who may be injured or stricken with disease cannot be gainsaid, but there is no logical relationship between the construction and maintenance of a hospital, important as it is, and the improvement of real estate situated in the district. The purpose is, of course, to provide a place where those who are so unfortunate as to be injured or to become diseased may receive the benefits of medical skill and modern apparatuses whether they be the owners of property or not, and such advantages

cannot fall in the category of special benefits to real property for which assessments would be authorized.

It is obvious that the district is not attempted to be created to serve any governmental object, but simply and solely for the construction and continuance of a sanitarium. "The Legislature shall authorize the several counties . . . in the State to assess and impose taxes for county . . . purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation" (Section 5, Article IX), which are uniformity and equality (Section 1, Article IX).

There is no express provision of the Constitution relative to special assessments, except in Section 7, Article X, as amended in 1934, and 1938, and no direct prohibition against them. Lainhart v. Catts, *et al.*, 73 Fla. 735, 75 So. 47. In the instant case, as we have already stated, although an attempt was made by the Legislature to establish a district there could be no special assessments for benefits and the tax authorized is a general one upon all property according to value by a board of trustees. Under the Constitution the right to assess and impose taxes is reposed in the county commissioners and may not be delegated to a board created for that and other purposes.

We have said that an Act authorizing county bonds to construct hospitals in a county and providing that the institution should be for the benefit of inhabitants showed that the bonds were for county purposes within Section 5, Article IX of the Constitution which we have quoted. State v. Walton County, 97 Fla. 59, 119 So. 865.

It is our conclusion that a district may not be created with general taxing authority but must be restricted to the power to levy assessments for special benefits and that the general power of taxation can be exercised only by the

county. In the instant case it appears that the power to assess and impose the ad valorem tax was attempted to be delegated to a district for the establishment of an improvement by which real property located in the area would not be specially benefitted. The district trustees could not be given that authority but could only have been empowered to make assessments where special benefits could be traced to the real property located in the region.

Under the Act, the county is not authorized to construct and maintain the hospital as a county project, State v. Walton County, *supra,* and no attempt to empower the district to levy special assessments. The scheme falls in neither category and the law authorizing it is invalid.

This cause is reversed with instructions to the chancellor to enter a final decree consistent with the views expressed.

BROWN, C. J., WHITFIELD and CHAPMAN, J. J., concur.

TERRELL, J., agrees to conclusion.

BUFORD, J., dissents.