273 So.2d 380 (1973)
SOUTH TRAIL FIRE CONTROL DISTRICT, SARASOTA COUNTY, Florida, a Political Subdivision of the State of Florida, Appellant,
v.
STATE of Florida, and the Taxpayers, Property Owners and Citizens of the South Trail Fire Control District, Sarasota County, Florida, Including Nonresidents Owning Property or Subject to Taxation Therein, et al., Appellees.
SOUTH TRAIL AREA FIRE CONTROL DISTRICT, a Florida Corporation, Appellant,
v.
TOWN HALL et al., Appellees.
Nos. 42824, 42825.
Supreme Court of Florida.
February 21, 1973.
*381 Nelson, Stinnett, Surfus, Korp & Payne, Venice, and Freeman, Richardson, Watson, Slade & McCarthy, Jacksonville, for appellant.
Henry P. Trawick, Jr., of Millican & Trawick, Sarasota, for appellees.
ADKINS, Justice.
These related causes, consolidated for convenience, are direct appeals from two dependent judgments of the Circuit Court of Sarasota County, one declaring Ch. 70-933, Laws of Florida, to be unconstitutional, and a second denying validation of a bond issue. We have jurisdiction. Fla. Const., art. V, § 4, F.S.A.
Appellant, Fire District, a special taxing district created by the Legislature, sought to issue $200,000 in bonds to help provide fire protection for the property encompassed by the Fire District in Sarasota County. The financing would come from taxes based on an assessment plan authorized by the Legislature in Ch. 70-933, Laws of Florida, and approved by the voters *382 in a referendum election. The statute contains the following:
"Said district shall have the duty, right, power and authority to levy and collect special assessments for benefits against all assessable property within its territorial bounds in order to provide funds for the purposes of said district. The furnishing of protection against fire, and the furnishing of ambulance service in accordance with the purposes of the district are hereby declared to be benefits to all property within the territorial bounds of the district and the following maximum rates of assessment are hereby found, determined and declared to be reasonable and in such amounts as not to exceed the benefits accruing to said property within the district. The rate of such assessments for protection against fire and the furnishing of ambulance service shall be fixed by a resolution of the board of fire commissioners as hereinafter provided, but in no event shall exceed the sum of five cents (5¢) per square foot for business and commercial buildings; the sum of ten dollars ($10.00) per annum on single family residences; the sum of twelve dollars and fifty cents ($12.50) per annum on duplex residences (two (2) family); the sum of ten dollars ($10.00) per each apartment unit located within a condominium or cooperative building or apartment rental building; the sum of fifty cents (50¢) per annum on unimproved subdivided lots; the sum of ten cents (10¢) per annum per acre on unsubdivided acreage, with a maximum per annum of fifteen dollars ($15.00) per parcel; five dollars ($5.00) per annum per rental trailer space in rental trailer parks. Rental trailer parks, motels and apartments in excess of two (2) families are construed as business. Multistory residential buildings shall be assessed an additional sum not to exceed five dollars ($5.00) per residential unit above the second floor. Said commissioners, in making assessment rolls, shall consider size of property, fire hazard and protection provided." (Emphasis supplied)
Town Hall and other commercial property owners, hereafter referred to as "Owners," filed suit against the planned assessment, attacking the validity of Ch. 70-933, Laws of Florida. The Circuit Court held the act to be unconstitutional and then denied the validation of the bond issue because part of the repayment plan had been invalidated.
The Owners submit the following question in their brief:
"Whether a determination of benefits accruing to business and commercial property by the Legislature is constitutional when the property is assessed on an area basis and all other property in the tax district is assessed at a flat rate basis and the evidence shows that the special assessments paid by business and commercial property as a result are discriminatory when compared with other property."
The Owners say the primary question is one of discrimination in that business and commercial property owners were paying 17.2% of the total assessments, while the value of their property was only 10.8% of all of the property in the district and they receive only 6% of the actual services of the district. The percentage of benefit was attempted to be shown by analyzing the number of fire calls. However, the evidence indicates that 34% of the structural fires in 1971 occurred in commercial structures. The Chief of the Fire District testified that the average would be around 27% to 28% of all structural fires, which is well above the 17% of the cost borne by the commercial property owners.
There is evidence that a commercial fire automatically demands more man power and equipment because of the condition surrounding a commercial structure, the size of the building, the density of buildings in a commercial area, and the volume of flammable materials collected in a commercial or business structure. Commercial *383 owners receive an annual fire inspection, which is available to residential owners only on demand. The following discussion of the rules relating to determination of benefits from a special assessment is found in 48 Am.Jur., Special or Local Assessments, § 29, pp. 588-589:
"The question of the existence and extent of special benefit resulting from a public improvement for which a special assessment is made is one of fact, legislative or administrative rather than judicial in character, and the determination of such question by the legislature or by the body authorized to act in the premises is conclusive on the property owners and on the courts, unless it is palpably arbitrary or grossly unequal and confiscatory, in which case judicial relief may be had against its enforcement. Such legislative determination can be assailed under the Fourteenth Amendment to the United States Constitution where the legislative action is arbitrary, and, by reason of its arbitrary character, a confiscation of particular property. The legislature may avail itself, for the purpose of such determination, of any information which it deems appropriate and sufficient. But the power of the legislature in these matters is not unlimited. There is a point beyond which it cannot go, even when it is exerting the power of taxation. It cannot by its fiat make a local improvement of that which in its essence is not such an improvement, and it cannot by its fiat make a special benefit to sustain a special assessment where there is no special benefit."
In Ch. 70-933, Laws of Florida, the Legislature made a specific finding that the maximum rates of assessment set forth therein were "found, determined and declared to be reasonable and in such amounts as not to exceed the benefits accruing to said property within the district." A matter of this kind depends largely upon opinion and judgment as to what will, or will not, prove a benefit to the district and the Court should not substitute its opinion and judgment for that of the Legislature in the absence of a clear and full showing of arbitrary action or a plain abuse. Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771 (1928); Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449 (1928).
The facts in the case sub judice fail to show that the Legislature has acted in an arbitrary and unwarranted manner.
In Meyer v. City of Oakland Park, 219 So.2d 417 (Fla. 1969), we said:
"Many elements enter into the question of determining and prorating benefits in a case of this kind. They are physical condition, nearness to or remoteness from residential and business districts, desirability for residential or commercial purposes, and many other peculiar to the locality where the lands improved are located. As stated by the Court in City of Ft. Myers v. State of Florida and Langford, 95 Fla. 704, 117 So. 97, 104:
"`No system of appraising benefits or assessing costs has yet been devised that is not open to some criticism. None have attained the ideal position of exact equality, but, if assessing boards would bear in mind that benefits actually accruing to the property improved in addition to those received by the community at large must control both as to benefits prorated and the limit of assessments for cost of improvement, the system employed would be as near the ideal as it is humanly possible to make it.'
"The term `benefit,' as regards validity of improvement assessments, does not mean simply an advance or increase in market value, but embraces actual increase in money value and also potential or actual or added use and enjoyment of the property. Vacant lots and lands, may, and usually do, receive a present special appreciable benefit from the construction of a sewer in proximity with and accessible by them for sewerage purposes *384 sufficient to sustain an assessment made on the basis of benefits. A reasonable approach to the question of best possible use is a determination of what can be done with the property by improvements which are reasonably attainable and which can enhance the value under all present circumstances or those foreseeable in the very near future.
"* * * The apportionment of the assessments is a legislative function and if reasonable men may differ as to whether land assessed was benefited by the local improvement, the determination of the City officials as to such benefits must be sustained." (pp. 419-420)
In Meyer v. City of Oakland Park, supra, we approved a legislative authorization for assessments upon a square foot basis as to all properties specially benefited. The statute under consideration authorized the special assessment to be by any one or combination of the methods set forth therein. See also Fire District No. 1 of Polk County v. Jenkins, 221 So.2d 740 (Fla. 1969), where the Court held that special assessments against mobile homes rental spaces were not arbitrary or discriminatory.
Apportionment of the cost of a public improvement is essential to the validity of the assessment therefor, and the assessment must represent a fair proportional part of the total cost of the improvement. The assessment must not be in excess of the proportional benefits as compared to other assessments on other lots and tracts affected by the improvement. See McQuillin, Volume XIV, Municipal Corporations, § 38.121 (1970). The manner of the assessment is immaterial and may vary within the district, as long as the amount of the assessment for each tract is not in excess of the proportional benefits as compared to other assessments on other tracts. The mere fact that some property is assessed on an area basis, and other property is assessed at a flat rate basis, does not in itself establish the invalidity of the special assessment.
In the case sub judice, all that has been shown is the comparative value of the commercial property involved and the fact that the taxes have risen sharply for the Owners. Other considerations, including frequency of fires, man power and equipment requirements, and benefits extended to commercial properties are not sufficiently rebutted. We cannot see that the Owners have met the burden of clearly showing the invalidity of the act.
Accordingly, the two judgments of the trial court appealed from are, and must be reversed, and the cause remanded for further bond validation proceedings, not inconsistent herewith.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN, BOYD, McCAIN and DEKLE, JJ., concur.