673 So.2d 135 (1996)
WATER OAK MANAGEMENT CORPORATION, et al., Appellants,
v.
LAKE COUNTY, Florida, etc., et al., Appellees.
No. 94-2729.
District Court of Appeal of Florida, Fifth District.
May 10, 1996.
*136 Daniel C. Brown, of Katz, Kutter, Haigler, Alderman, Marks & Bryant, P.A., and Larry E. Levy, Tallahassee, for Appellants.
Robert L. Nabors, Gregory T. Stewart and Virginia Saunders Delegal, of Nabors, Giblin & Nickerson, P.A., Tallahassee, and Rolon W. Reed and Sanford A. Minkoff, Tavares, for Appellee, Lake County, Florida.
Gaylord A. Wood, Jr., of Wood & Stuart, P.A., Fort Lauderdale, for Appellee, Ed Havill as Lake County Property Appraiser.
PER CURIAM.
Appellants, Water Oak Management Corporation, Sun QRS, Inc., and John Richard Sellars, appeal the summary final judgment of the lower court upholding the validity of Lake County's special assessments for fire protection and solid waste disposal.[1] While we find no error in Lake County's special assessment of all improved non-exempt property in the county for solid waste disposal, especially in light of the Supreme Court of Florida's recent decision in Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180 (Fla.1995),[2] we cannot agree that Lake County's fire protection special assessment is a valid special assessment. Accordingly, we reverse the summary final judgment as it pertains to the special assessment for fire protection. We will, however, certify the issue of validity of this special assessment to our supreme court.
Fire protection services are authorized by the Florida Constitution under county home rule powers and under section 125.01(1)(d), Florida Statutes (1993). Pursuant to section 125.01(1)(q), the county may establish, merge or abolish municipal service taxing or benefit units (MSTU, MBTU) for any or all of its unincorporated areas, within which may be provided a wide variety of services ranging from fire protection to transportation to health care. The statute provides that funds for these services may be derived from service charges, special assessments or taxes.[3] With consent, the MSTU or MBTU can include all or part of a municipality.
In 1980, Lake County created various fire control districts within the county to facilitate the provision of fire protection services in the unincorporated area. Lake County funded these districts through a special ad valorem tax levy. In 1984, the voters of Lake County and the voters within each fire control district approved the imposition of a special assessment for fire protection. Consequently, in 1985 Lake County changed its fire control program to impose a special assessment against property for fire protection. Lake County also established the maximum amount of the assessment for various land uses. Lake County provided and funded fire control services in this manner until 1990.
On December 11, 1990, Lake County adopted Ordinance 1990-24 which created a single MSTU[4] consisting of the entire unincorporated area of Lake County, the city of Minneola, and the town of Lady Lake. This ordinance had the effect of consolidating all the county's previously created fire control districts into a single unit and authorized the collection of special assessments pursuant to section 197.3632, Florida Statutes (1993). Lake County's affidavit filed in support of the motion for summary judgment recites that the properties assessed are "benefitted" because they receive fire protection.[5]
*137 Lake County's fire protection budget is based on the fire department's overall costs of operation. The budget provides funding for fire stations, fire fighter salaries, equipment, training, and other general operating expenses. The fire protection special assessment is determined by setting the county fire protection budget, then deducting revenues received from other sources. The assessment covers approximately sixty-eight percent of the budget and eliminates the use of the county's general funds for this purpose. Lake County provides a number of services under the umbrella of "fire protection services" such as fire suppression activities, first-response medical aid, educational programs and inspections. The medical response teams stabilize patients and provide them with initial medical care. The fire department responds to automobile and other accident scenes and is involved in civil defense. Fire services are provided to all individuals and property involved in such incidents.
Appellant John Richard Sellars owns homestead property in unincorporated Lake County within the fire protection MSTU. The other appellants own commercial property in the fire protection MSTU. Appellants complain that because Lake County's fire service is equally available to and benefits all county residents, property owners or not, as well as non-Lake County residents, funding of fire protection by special assessment is invalid. Although appellants' property may "benefit" from the fire protection services offered, they do not meet the "special benefit" requirement because there is no benefit accruing to the property in addition to those received by the community at large. See South Trail Fire Control District, Sarasota County v. State, 273 So.2d 380, 383 (Fla. 1973). They also question whether certain activities such as emergency medical services and educational programs provide a benefit "accruing to the property" at all. Id.[6]
Lake County relies on the supreme court's holdings in Fire Dist. No. 1 of Polk County v. Jenkins, 221 So.2d 740 (Fla.1969) and South Trail Fire Control District for the proposition that, as a matter of law, fire protection and related services provide a special benefit to the burdened property and are properly funded by a special assessment. In Polk County, the supreme court overturned a lower court decision declaring invalid a special act authorizing the funding of fire protection in a fire district within Polk County by special assessment on the lots of a mobile home park. In the course of that opinion, the court said:
On the question of to what extent property may be said to be specially benefited by the creation and operation of a Fire District, much may be said. Fire protection and the availability of fire equipment afford many benefits.
Fire insurance premiums are decreased; public safety is protected; the value of business property is enhanced by the creation of the Fire District, a trailer park with fire protection offers a better service to tenants....
Polk County, 221 So.2d at 741.
In St. Lucie County-Fort Pierce Fire Prevention and Control Dist. v. Higgs, 141 So.2d 744 (Fla.1962), however, the high court held that a special act creating a county-wide fire prevention district was invalid because no parcel of land was specially or peculiarly benefited in proportion to its value; rather, the assessment was a general one on all property in the county-wide district for the benefit of all. 141 So.2d at 746. The divergence in these cases simply suggests that the question of "special benefit" is, to a great extent, driven by the facts. Madison County v. Foxx, 636 So.2d 39, 49 (Fla. 1st DCA 1994).[7] For example, the creation of a special *138 fire district, within a limited area of the county, to bring fire services which formerly were distant, into close proximity with the property would seem to offer a special benefit of the kind the high court had in mind in Polk County. On the other hand, for a county simply to conclude one day that its same historically provided county-wide fire services are of "special benefit" to the property located within its boundaries and, accordingly, to begin specially assessing all the properties to pay for the service seem not to be the kind of "special benefit" to property contemplated by the high court. Cf. Murphy v. City of Port St. Lucie, 666 So.2d 879, 881 (Fla. 1995); but see Harris v. Wilson, 656 So.2d 512, 514 n. 4 (Fla. 1st DCA 1995), review granted, 666 So.2d 143 (Fla.1995).
There is little doubt based on prior case law that fire protection services provide a benefit[8] to the properties assessed. Less obvious is whether the benefit is special. In the instant case, Lake County urges that the requisite special benefit to the assessed properties is present because such services "protect persons who reside, occupy or have reason to be present at such property, provides better service to actual and potential occupants of property, and enhances the public safety of such property." "Special" doesn't mean a benefit to property that it wouldn't otherwise enjoy; it is supposed to mean different in type or degree from benefits provided the community as a whole. Cf. § 170.01(2) (Fla.Stat.1995). We appreciate the point made by the Florida Supreme Court in its recent decision in Sarasota Church of Christ that a special assessment need not be limited to a specific area or class of property owners and that there may be a special benefit whether the recipients "are spread throughout an entire community or are merely located in a limited specified area within the community." 667 So.2d at 183. Even the supreme court took pains in Sarasota Church of Christ to identify the special benefit to the specially assessed property, i.e. supplying a means of dealing with storm water runoff from the improved properties, which were the ones with impervious surface areas generating runoff. In Sarasota Church of Christ, the special assessment deemed valid was designed to provide a remedy for the special problems or burdens such improved properties create. In this case, however, as far as we can tell, every piece of real property, personal property and every person in unincorporated Lake County has access to the same basic garden variety Lake County fire protection services. The "special assessment" merely funds an undifferentiated service for the county in general and is designed to reduce costs of this service that would otherwise come from general revenue funded by ad valorem taxes.
We mention, finally, that the deference we must give to a county's legislative determination of "special benefit"[9] presents a problem in this case because it is unclear on this record that this legislative determination as to the special benefit of fire protection has ever been made by Lake County. We have been directed to no such recital and have *139 found none.[10] The record indicates that the decision to switch from ad valorem to "special assessment" funding of fire services was done by referendum. Our decision does not depend entirely on this technical deficiency, however, because we conclude that even under the strict standard of deference articulated by the supreme court,[11] Lake County's "special assessment" for fire protection fails the special benefit test. Referring back to language quoted by the Florida Supreme Court in South Trail Fire Control District:
[T]he power of the legislature in these matters is not unlimited. There is a point beyond which it cannot go, even when it is exerting the power of taxation. It cannot by its fiat make a local improvement of that which in its essence is not such an improvement, and it cannot by its fiat make a special benefit to sustain a special assessment where there is no special benefit.
273 So.2d at 383. The determination that Lake County may fund its fire services for the entire unincorporated county plus two municipalities by special assessment based on a special benefit to all assessed properties seems "arbitrary" to us. Sarasota Church of Christ, 667 So.2d at 184. If Lake County's fire protection services provide a benefit that is "special," then "special" has a meaning the supreme court needs to explain more fully, for everyone's benefit. Given the proliferation of "special assessments" as a device for funding local government in Florida, the boundaries, if any, of special assessment funding need to be drawn more clearly.[12] Accordingly, we affirm the judgment in favor of Lake County as to the special assessment for solid waste disposal but reverse as to fire protection services and we certify to the supreme court the following question:
IS LAKE COUNTY'S FUNDING BY SPECIAL ASSESSMENT OF SOLID WASTE DISPOSAL AND/OR FIRE PROTECTION SERVICES VALID UNDER THE FLORIDA CONSTITUTION?
AFFIRMED in part; REVERSED in part and REMANDED.
GOSHORN, GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] Appellants contend these special assessments are void under Article VII, Sections 6 and 9, and Article X, Section 4, of the Florida Constitution.
[2] But see Harris v. Wilson, 656 So.2d 512, 519-20 (Fla. 1st DCA 1995) (Booth, J. dissenting), review granted, 666 So.2d 143 (Fla.1995).
[3] We read this section as being descriptive, not as authorizing all listed services to be funded by all of the devices identified. See Madison County v. Foxx, 636 So.2d 39, 48 (Fla. 1st DCA 1994).
[4] Municipal Service Taxing Unit. It is acknowledged by Lake County that this is incorrect nomenclature for such an assessment.
[5] Lake County further argues that if no fire protection services were present in Lake County, the entire county would be rated a ten on the Insurance Services Office ["ISO"] schedule for insurance premiums, but, due to the proximity to hydrants, most Lake County properties are at some level less than ten. Appellants assert, however, that Lake County neither installs or maintains hydrants.
[6] The cases historically speak of a benefit to the property or land; however, in its recent Sarasota Church of Christ decision, the supreme court has begun to speak in terms of benefit to a particular "class of property owners." 667 So.2d at 183. If this change has substance, the implication for expansion of the use of special assessments is huge.
[7] A more recent case upholding a fire assessment is the district court of appeal's decision in Sarasota County v. Sarasota Church of Christ, 641 So.2d 900 (Fla. 2d DCA 1994). That case, however, appears to rely principally on some application of estoppel, which we do not find helpful. Id. at 902.
[8] The county attempts to assuage any fear that special assessments will be indiscriminately used to fund county services without regard to the ten mil cap by acknowledging that such special assessments must be limited to services that benefit the property. Appellants' riposte is that Lake County has already authorized, but (apparently) has not implemented, the use of special assessments to fund police protection, animal control, transportation, library services and recreation. These other hypothetical special assessments do raise the question of what constitutes a "benefit to the property." Waste disposal and storm water runoff services clearly provide a benefit to the property. Fire services also provide a benefit. Less clear, however, is why first response medical care is a benefit to the property, unless "removing a sick person from the property" is the benefit. If that is so, then the removal of bad people from property by law enforcement would be a benefit justifying special assessment funding for police protection. The county's recording function presumably also is fundable by special assessment as a service to the property. Even the courts, under the same reasoning, could be funded by special assessment since the courts settle title disputes, adjudicate torts committed against property and on property and, through their injunctive power, can order all sorts of unwanted persons off property.
[9] 667 So.2d at 183-84.
[10] The following, which is the closest we can find, appears in one of the annual resolutions. Resolution No. 1991-113, contains the following language, which we think is descriptive of a benefit but not a "special benefit":

Section 3. Findings Regarding Need for Non-Ad Valorem Special Assessment Levy and Benefits Accrued.
A. The levy of a non-ad valorem assessment for the provision of fire protection and rescue facilities, services and operations is necessary in order to fund a comprehensive, coordinated, economical and efficient fire protection program and rescue services within the "Lake County Municipal Service Taxing Unit for Fire Protection", which includes a portion of the unincorporated area of Lake County, the Town of Lady Lake and the City of Minneola.
B. Some of the benefits accruing to the real property by the provision of the fire and rescue service through the levy of this non-ad valorem assessment are:
1. A reduction in fire insurance premiums;
2. The public safety is protected; and
3. The public health is protected.
[11] Id.
[12] See 656 So.2d at 521 (Booth, J., dissenting).