695 So.2d 667 (1997)
LAKE COUNTY, Florida, etc., Petitioners,
v.
WATER OAK MANAGEMENT CORPORATION, et al., Respondents.
No. 88218.
Supreme Court of Florida.
May 1, 1997.
Rehearing Denied June 16, 1997.
Robert L. Nabors, Gregory T. Stewart and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee, Sanford A. Minkoff, Lake County Attorney, Tavares, and Gaylord A. Wood, Jr. of the Law Offices of Wood & Stuart, P.A., Fort Lauderdale, for Petitioners.
Daniel C. Brown of Katz, Kutter, Haigler, Alderman, Marks & Bryant, P.A., Tallahassee, and Larry E. Levy, Tallahassee, for Respondents.
David G. Tucker, County Attorney and Nancy Stuparich, Assistant County Attorney, Pensacola, for amicus curiae Escambia County, Florida.
William J. Roberts, General Counsel, Florida Association of Counties, Tallahassee, Jorge L. Fernandez, President, Florida Association of County Attorneys, Sarasota, and Harry "Chip" Morrison, General Counsel and Kraig Conn, Florida League of Cities, Inc., Tallahassee, for amici curiae Florida Association of Counties, Florida Association of County Attorneys, and Florida League of Cities, Inc.
OVERTON, Justice.
We have for review Water Oak Management Corp. v. Lake County, 673 So.2d 135 (Fla. 5th DCA 1996), in which the district court certified the following question to be of great public importance:
IS LAKE COUNTY'S FUNDING BY SPECIAL ASSESSMENT OF SOLID WASTE DISPOSAL AND/OR FIRE PROTECTION SERVICES VALID UNDER THE FLORIDA CONSTITUTION?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We reword the certified question as follows:

*668 DO LAKE COUNTY'S SOLID WASTE DISPOSAL AND FIRE PROTECTION SERVICES FUNDED BY SPECIAL ASSESSMENT PROVIDE A SPECIAL BENEFIT TO THE ASSESSED PROPERTIES?
For the reasons expressed, we answer the reworded question in the affirmative.
Water Oak Management Corporation and other property owners in Lake County filed suit seeking to invalidate Lake County's special assessments for fire protection and solid waste disposal services. The trial court granted summary judgment in favor of Lake County, finding the assessments to be valid. On appeal, the Fifth District Court of Appeal affirmed, without discussion, the summary judgment as to the solid waste disposal assessment based on this Court's recent decision in Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180 (Fla.1995). The district court found, however, that the special assessment for fire protection services was invalid because the services funded by the assessment provided no special benefit to the assessed properties. The district court determined that a special benefit is one that is "different in type or degree from benefits provided the community as a whole."[1] Because everyone in the county has access to "basic garden variety Lake County fire protection services," the district court found the assessment to be invalid. In so holding, the district court certified the aforementioned question.
First, based on our opinion in Harris v. Wilson, 693 So.2d 945 (Fla.1997), we agree with the district court's summary conclusion that the solid waste disposal special assessment at issue in this case is valid. In Harris, we recently approved a very similar assessment. See also Sarasota County. We disagree, however, with the district court's conclusion that the fire protection services funded by the special assessment in this case do not provide a special benefit to the assessed properties and thus is invalid. The relevant facts regarding these services were set forth by the district court as follows:
In 1980, Lake County created various fire control districts within the county to facilitate the provision of fire protection services in the unincorporated area. Lake County funded these districts through a special ad valorem tax levy. In 1984, the voters of Lake County and the voters within each fire control district approved the imposition of a special assessment for fire protection. Consequently, in 1985 Lake County changed its fire control program to impose a special assessment against property for fire protection. Lake County also established the maximum amount of the assessment for various land uses. Lake County provided and funded fire control services in this manner until 1990.
On December 11, 1990, Lake County adopted Ordinance 1990-24 which created a single MSTU1 consisting of the entire unincorporated area of Lake County, the city of Minneola, and the town of Lady Lake. This ordinance had the effect of consolidating all the county's previously created fire control districts into a single unit and authorized the collection of special assessments pursuant to section 197.3632, Florida Statutes (1993). Lake County's affidavit filed in support of the motion for summary judgment recites that the properties assessed are "benefitted" because they receive fire protection.2
Lake County's fire protection budget is based on the fire department's overall costs of operation. The budget provides funding for fire stations, fire fighter salaries, equipment, training, and other general operating expenses. The fire protection special assessment is determined by setting the county fire protection budget, then deducting revenues received from other sources. The assessment covers approximately sixty-eight percent of the budget and eliminates the use of the county's general funds for this purpose. Lake County provides a number of services under the umbrella of "fire protection services" such as fire suppression activities, first-response medical aid, educational programs and inspections. The medical response teams *669 stabilize patients and provide them with initial medical care. The fire department responds to automobile and other accident scenes and is involved in civil defense. Fire services are provided to all individuals and property involved in such incidents.
1 Municipal Service Taxing Unit. It is acknowledged by Lake County that this is incorrect nomenclature for such an assessment.
2 Lake County further argues that if no fire protection services were present in Lake County, the entire county would be rated a ten on the Insurance Services Office ["ISO"] schedule for insurance premiums, but, due to the proximity to hydrants, most Lake County properties are at some level less than ten.
Water Oak, 673 So.2d at 136-37.
In reviewing a special assessment, a two-prong test must be addressed: (1) whether the services at issue provide a special benefit to the assessed property; and (2) whether the assessment for the services is properly apportioned. Sarasota County, 667 So.2d at 183; City of Boca Raton v. State, 595 So.2d 25, 30 (Fla.1992). As reflected by the district court's decision and the reworded certified question, the case before us deals with the first prong, special benefit.
The property owners urge us to approve the district court's decision. They argue that the special assessment for fire protection services is unconstitutional because those services do not provide a "unique" benefit to the assessed properties and are not "different in type or degree from benefits provided the community as a whole." They assert that in St. Lucie County-Fort Pierce Fire Prevention & Control District v. Higgs, 141 So.2d 744 (Fla.1962), this Court correctly rejected assessments for fire protection because those services were of a general nature and did not provide a unique benefit to the assessed properties. We reject this contention and find that the property owners have misconstrued our decision in Higgs. In fact, this Court has previously determined that fire protection services do provide a special benefit to real property. South Trail Fire Control Dist. v. State, 273 So.2d 380 (Fla.1973); Fire Dist. No. 1 v. Jenkins, 221 So.2d 740 (Fla.1969).
In evaluating whether a special benefit is conferred to property by the services for which the assessment is imposed, the test is not whether the services confer a "unique" benefit or are different in type or degree from the benefit provided to the community as a whole;[2] rather, the test is whether there is a "logical relationship" between the services provided and the benefit to real property. Whisnant v. Stringfellow, 50 So.2d 885 (Fla.1951); Crowder v. Phillips, 146 Fla. 440, 1 So.2d 629 (1941)(on rehearing). Although fire protection services are generally available to the community as a whole, the greatest benefit of those services is to owners of real property. As we stated in Jenkins:
On the question of to what extent property may be said to be specially benefited by the creation and operation of a Fire District, much may be said. Fire protection and the availability of fire equipment afford many benefits.
Fire Insurance premiums are decreased; public safety is protected; the value of business property is enhanced by the creation of the Fire District; a trailer park with fire protection offers a better service to tenants, which would reflect in the rental charge of the spaces. It is not necessary that the benefits be direct or immediate, but they must be substantial, certain, and capable of being realized within a reasonable time.
221 So.2d at 741. As we concluded in Jenkins, fire protection services do, at a minimum, specially benefit real property by providing for lower insurance premiums and enhancing the value of the property. Thus, there is a "logical relationship" between the services provided and the benefit to real property. However, to be valid, the assessment for fire protection services must still meet the apportionment test; that is, the assessment must be properly apportioned as to the special benefit received by the assessed *670 property. This was the reason we disapproved the fire protection services assessment in Higgs. In that case, the assessment was levied on "`taxable property, including homesteads, to the extent that taxes may be lawfully levied upon homesteads.'" 141 So.2d at 745-46 (quoting ch. 59-1806, Laws of Fla.)(alteration in original). We concluded that the fees assessed in that case constituted a tax rather than a special assessment because "no parcel of land was specially or peculiarly benefited in proportion to its value." Id. at 746 (second emphasis added). Specifically, the assessment in that case was actually a tax because it had been wrongfully apportioned based on the assessed value of the properties rather than on the special benefits provided to the properties. In sum, we disapproved the assessment in Higgs based on the assessment's failure to meet the apportionment prong rather than the special benefit prong. Thus, the contention of the property owners that Higgs controls the issue of whether fire services provide a special benefit to the assessed properties is without merit. Rather, Higgs addresses the question of apportionment, which is not before us in this review.
Contrary to the assertions of the opponents to the assessment here, we do not believe that today's decision will result in a never-ending flood of assessments. Clearly, services such as general law enforcement activities, the provision of courts, and indigent health care are, like fire protection services, functions required for an organized society. However, unlike fire protection services, those services provide no direct, special benefit to real property. Whisnant. Thus, such services cannot be the subject of a special assessment because there is no logical relationship between the services provided and the benefit to real property.
Accordingly, we find that Lake County's solid waste disposal and fire protection services funded by special assessment provide a special benefit to the assessed properties; we answer the certified question, as reworded, in the affirmative; and we quash that portion of the district court's decision that rules the fire protection services special assessment invalid.
It is so ordered.
KOGAN, C.J., and SHAW and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion, in which GRIMES and HARDING, JJ., concur.
WELLS, Justice, dissenting.
I dissent. Consistent with my separate dissenting opinions first in Sarasota County v. Sarasota Church of Christ, 667 So.2d 180 (Fla.1995), and then in Harris v. Wilson, 693 So.2d 945 (Fla.1997), and State v. Sarasota County, 693 So.2d 546 (Fla.1997), I cannot concur with the majority's conversion of this state's local-government tax base to a general-assessment tax base, thereby demolishing constitutional provisions for ad valorem tax caps, homestead exemptions, and bonding referendums. The majority's path of demolition began in Sarasota Church of Christ, when it eliminated "special" from "special assessment." Today, the Court broadens the path further. Most alarmingly the majority changes the test for determining what is a special assessment. I would approve the decision of the district court in this case which held that the fire protection services in this case did not provide a special benefit to the real property in the service district.
This Court has previously addressed questions concerning special assessments for fire prevention districts. See South Trail Fire Control Dist. v. State, 273 So.2d 380 (Fla. 1973); Fire District No. 1 v. Jenkins, 221 So.2d 740 (Fla.1969); St. Lucie County-Fort Pierce Fire Prevention & Control Dist. v. Higgs, 141 So.2d 744 (Fla.1962). However, the results in these cases may not have appeared consistent. Compare South Trail Fire Control Dist. (finding proper the apportionment of a special assessment for fire protection which required commercial property owners to pay on an area basis and other property owners to pay on a flat-rate basis) and Jenkins (finding valid special assessments for fire protection against each parcel of real estate, including mobile home rental spaces, in the fire district), with Higgs *671 (finding invalid a special assessment for fire protection to each parcel of land in a fire district with boundaries coinciding with the county). In reconciling these cases, I do not agree with the majority that this Court reached its decision in Higgs (finding the assessment was invalid) on the basis that the assessment failed the "apportionment" prong rather than the "special benefit" prong. See majority op. at 669-670. The reason for my disagreement is simply that the word "apportionment" is not in the Higgs opinion. Rather, that opinion is succinctly and accurately characterized by the district court in this case:
In St. Lucie County-Fort Pierce Fire Prevention and Control Dist. v. Higgs, 141 So.2d 744 (Fla.1962), however, the high court held that a special act creating a county-wide fire prevention district was invalid because no parcel of land was specially or peculiarly benefited in proportion to its value; rather, the assessment was a general one on all property in the countywide district for the benefit of all. 141 So.2d at 746.
Water Oak Management Corp. v. Lake County, 673 So.2d 135, 137 (Fla. 5th DCA 1996); see also Murphy v. City of Port St. Lucie, 666 So.2d 879, 881 (Fla.1995) (stating that the special assessment in Higgs was invalid because the county attempted to assess all properties in order to provide fire protection to the entire county). In fact, Higgs is founded upon Justice Thornal's succinct and lucid opinion in Fisher v. Board of County Commissioners, 84 So.2d 572 (Fla. 1956). Fisher is a case which I have relied upon in my dissents on this issue and which the majority ignores as if it did not exist.
I do not believe that this Court should in this case rewrite our decisional law. Rather, I conclude that we can reconcile our conflicting decisions on this issue as the district court did below. See Water Oak Management Corp., 673 So.2d at 137-38. The court there found that the divergence of these cases suggests that the question of a "special benefit" is a decision based primarily on the facts of each case. Id. As an example, the district court stated that the creation of a fire district within a limited area of the county, which brought fire services which were formerly distant into close proximity with the property, would seem to offer a special benefit of the kind envisioned in Jenkins. Water Oak Management Corp., 673 So.2d at 137-38. However, I completely agree with the district court that a county's determination to specially assess all property in a county for the same historically provided county-wide fire protection services on the basis that these services now provide a special benefit is not proper. Id.
Furthermore, I take particular issue with the majority's test for the determination of a special benefit. The majority states:
In evaluating whether a special benefit is conferred to property by the services for which the assessment is imposed, the test is not whether the services confer a "unique" benefit or are different in type or degree from the benefit provided to the community as a whole; rather, the test is whether there is a "logical relationship" between the services provided and the benefit to real property. Whisnant v. Stringfellow, 50 So.2d 885 (Fla. 1951); Crowder v. Phillips, 146 Fla. 440, 1 So.2d 629 (1941) (on rehearing).
Majority op. at 669 (footnote omitted). By making this statement, the majority subtly revises history and definitely erases the distinction between a special assessment and a tax for several reasons. First, in both Whisnant and Crowder, this Court struck the levy as being a tax rather than a special assessment. See Whisnant (finding a levy for a county health unit a tax rather than a special assessment on the basis that this unit provided no special or peculiar benefit to the real property located in the district); Crowder (finding a levy for the construction of a hospital in a district coextensive with Leon County a tax on the basis that the hospital provided a benefit to the entire community and not just landowners).
Additionally, while both Whisnant and Crowder mention the need for a "logical relationship" for a special assessment to be valid, the majority takes this statement out of context. For in each of these cases this Court recognized that a logical relationship alone is not enough; the special assessment must also provide a special or peculiar benefit to the real property located in the district. Whisnant, 50 So.2d at 885-886; Crowder, *672 146 Fla. at 441-43, 1 So.2d at 631. To hold otherwise spurns the historical test for determining whether a levy is a special assessment announced in City of Boca Raton v. State, 595 So.2d 25 (Fla.1992).
In City of Boca Raton, this Court expressly relied upon and, in the eyes of any objective reader, revalidated this Court's statement in Klemm v. Davenport, 100 Fla. 627, 631, 129 So. 904, 907 (1930):
A tax is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A special assessment is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax, but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment.
There is simply no way to reconcile the majority's new "logical relationship" test with the "peculiar benefit" analysis first stated in Klemm and later cited in City of Boca Raton. I can only conclude that the majority has receded from City of Boca Raton, though it states elsewhere in the opinion that it relies upon it. See majority op. at 669.
In sum, I would affirm the district court's conclusion that Lake County's special assessment for fire protection fails the specialbenefit test. See Water Oak Management Corp. I would not rephrase the adequate question certified by the district court[3] and would answer the certified question in respect to fire protection in the negative.
GRIMES and HARDING, JJ., concur.
NOTES
[1] The district court obtained this language from section 170.01(2), Florida Statutes (1995), which governs the authority for municipalities to levy special assessments.
[2] The district court erred in comparing the special assessment to section 170.01(2), the statute governing municipal powers, and in stating that the services funded through a special assessment must be "different in type or degree from benefits provided the community as a whole." There is no such limitation in the constitution or statute governing county governments.
[3] In its rephrased question, the majority answers the issue of the propriety of the solid waste special assessment, even though this issue is not discussed in the district court's opinion, and I would not address it here.