Mr. James G. Sisco St. Johns County Attorney Post Office Box 1533 Saint Augustine, Florida 32085-1533
Dear Mr. Sisco:
You have asked for my opinion on substantially the following question:
May a non-charter county levy special assessments on specially benefitted property to fund the replacement of above-ground electric transmission lines with underground electric transmission lines when the transmission lines are neither owned, operated, nor franchised by the county?
In sum:
While the governing body of the county must make the appropriate findings to accomplish this project, a non-charter county may levy special assessments on specially benefitted property to fund the replacement of above-ground electric transmission lines with underground electric transmission lines when the transmission lines are not owned, operated, or franchised by the county.
According to information submitted with your request, the Board of County Commissioners of St. Johns County has been approached by citizens residing in an urbanized, unincorporated portion of the northeastern section of the county concerning potential construction work regarding the electric power lines that serve the community in which they live. Presently, electricity is provided to this area through overhead power lines stationed on utility poles that run through the area. The citizens who have approached the board of county commissioners are proposing to have the electric power lines moved underground, which would require expenditure of funds for the construction necessary to make this conversion.
The board of county commissioners has determined that conversion from overhead to underground electric service would provide aesthetic benefits for the citizens living in the affected area and would reduce instances of power outages resulting from exposure of overhead power lines to both natural and man-made occurrences. The citizens who have approached the board with this proposal have suggested that all or part of the construction costs associated with converting the electric service from overhead lines to underground lines be financed through special assessments imposed by the county on the parcels of real property in the area that would have underground electric utility service. Jacksonville Beach Utilities, owned and operated by the City of Jacksonville Beach, Florida, is located in Duval County adjacent to the area in question and is the electric utility providing electric service to the citizens in St. Johns County who are making this request. Jacksonville Beach Utilities owns the electric power lines that will be relocated if the project goes forward and has indicated its willingness to pay part of the cost of the proposed conversion but not all of the costs, resulting in the request of the citizens to the board of county commissioners.
Section 125.01(1)(r), Florida Statutes, in setting forth the powers of the governing body of a county, states that such powers include the power to "[l]evy and collect taxes, . . . and special assessments; . . . which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law." As distinguished from taxes, special assessments must confer a specific benefit on the land burdened by the assessment. They are imposed under the theory that the portion of the community responsible for the cost of the assessment will receive a special benefit from the improvement or service for which the assessment is levied.[1] As the Florida Supreme Court has determined, "the validity of a special assessment turns on the benefits received by the recipients of the services and the appropriate apportionment of the cost thereof."[2]
Based on this consideration, a two-pronged test has been developed for determining the validity of special assessments: 1) whether the services at issue provide a special benefit to the assessed property; and 2) whether the assessment for the services is properly apportioned.[3] These are questions of fact to be determined by a legislative body rather than the judiciary or an agency of the executive branch, such as the Attorney General's Office.[4] Thus, the Board of County Commissioners of St. Johns County is the appropriate entity to make the determination of whether a proposed special assessment will satisfy the test established by Florida courts for a valid special assessment.
In making this determination, however, it may be helpful for the county to consider a recent Florida Supreme Court case dealing with the imposition of a special assessment for fire protection services. In Lake County v. Water Oak Management Corporation,[5]
the Court provided examples of those types of services that would not be appropriate subjects for special assessments:
"Clearly, services such as general law enforcement activities, the provision of courts, and indigent health care are, like fire protection services, functions required for an organized society. However, unlike fire protection services, those services provide no direct, special benefit to real property. Thus, such services cannot be the subject of a special assessment because there is no logical relationship between the services provided and the benefit to real property."[6]
In deciding what types of projects may be the subject of special assessments by a non-charter county, the board of county commissioners may wish to consider the statutorily authorized uses for special assessments imposed by municipalities. While not providing authority for counties to act, Chapter 170, Florida Statutes, does provide a supplemental and alternative method of making local municipal improvements. This chapter authorizes municipalities to impose special assessments for numerous projects such as the construction, reconstruction, repair and paving of streets, and the construction, reconstruction, and repair of sewers. Of particular significance to St. Johns County may be the projects detailed in section 170.01(1)(d), Florida Statutes, which provides that a municipality may:
"Pay for the relocation of utilities, including the placementunderground of electrical, telephone, and cable televisionservices, pursuant to voluntary agreement with the utility, but nothing contained in this paragraph shall affect a utility's right to locate or relocate its facilities on its own initiative at its own expense[.]" (e.s.)
Thus, the statutes clearly recognize the placement of underground electrical services as a proper purpose for municipalities imposing special assessments.
While a county's exercise of authority is generally restricted to its territorial limits,[7] this principle would not interfere with St. Johns County entering into an agreement with Jacksonville Beach Utilities for purposes of paying for the relocation of electrical services supplied to residents of St. Johns County. For example, section 125.01(1)(p), Florida Statutes, authorizes non-charter counties to "[e]nter into agreements with other governmental agencies within or outside the boundaries of the county for joint performance, or performance by one unit in behalf of the other, of any of either agency's authorized functions."
In Attorney General Opinion 97-80, this office was asked whether Pasco County could impose a special assessment on residents of Hillsborough County to repair a local road located primarily in Hillsborough County. While this office concluded that Pasco County could not impose a special assessment on property located in Hillsborough County to repair a local road located in Hillsborough County, the county could impose a special assessment to repair that portion of the road located in Pasco County on those Pasco County residents whose property derives a special benefit from the road's improvement. However, the opinion suggested that Pasco County could enter into an agreement with Hillsborough County regarding maintenance of the road.
Thus, it may be possible for St. Johns County and Jacksonville Beach Utilities to enter into an agreement in which the county imposes and collects a special assessment with which to finance work done by the utility to provide underground utility services to St. Johns County residents. In imposing these special assessments, the county should follow the statutory procedures for various other types of assessments requiring that the county provide notice of its intent to impose special assessments and provide individual notice to affected property owners, hold a hearing to receive objections and, following preparation of the preliminary assessment roll, act as an equalizing board to review objections to the confirmation of the assessment roll.[8]
In sum, while the governing body of the county must make the appropriate findings to accomplish this project, a non-charter county may levy special assessments on specially benefitted property to fund the replacement of above-ground electric transmission lines with underground electric transmission lines when the transmission lines are not owned, operated, or franchised by the county.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992) and Sarasota County v. Sarasota Church of Christ, Inc.,667 So.2d 180 (Fla. 1995).
[2] Sarasota County, id. at 183.
[3] See, Lake County v. Water Oak Management Corp.,695 So.2d 667 (Fla. 1997); Sarasota County v. Sarasota Church of Christ,Inc., 667 So.2d 180 (Fla. 1995); City of Boca Raton v. State,595 So.2d 25 (Fla. 1992).
[4] See, Sarasota County v. Sarasota Church of Christ, Inc., id. at 184 (Fla. 1995); City of Boca Raton, id.; South Trail FireControl District v. State, 273 So.2d 380 (Fla. 1973).
[5] 695 So.2d 667 (Fla. 1997).
[6] Id. at 670. And see, Collier County v. State,733 So.2d 1012 (Fla. 1999) (general police-power services that county provided to all county residents for general benefit cannot be subject of special assessment.)
[7] See, Op. Att'y Gen. Fla. 97-80 (1997) (Pasco County may not impose special assessment on property located in Hillsborough County to repair a local road located in Hillsborough County.
[8] See, s. 153.05, Fla. Stat., authorizing counties to levy special assessments for the construction or reconstruction of water system improvements and sanitary sewers; and cf., Ch. 170, Fla. Stat., providing a supplemental and alternative method for making local municipal improvements.