667 So.2d 180 (1995)
SARASOTA COUNTY, Petitioner,
v.
SARASOTA CHURCH OF CHRIST, INC., et al., Respondents.
No. 84414.
Supreme Court of Florida.
December 21, 1995.
Rehearing Denied February 6, 1996.
*181 Richard E. Nelson, Richard L. Smith and Michael S. Drews of Nelson, Hesse, Cyril, Smith, Widman, Herb, Causey & Dooley, Sarasota, for Petitioner.
Stephen F. Ellis, Sarasota, Florida; and I.W. Whitesell, Jr., Sarasota, for Respondents.
Robert L. Nabors and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee, Special Counsel for Finance and Tax, Florida Association of Counties, Inc.; Emeline Acton, President, Florida Association of County Attorneys, Inc., Tampa, Florida; and Harry Morrison, Jr., General Counsel, Florida League of Cities, Inc., Tallahassee, Amici Curiae for Florida Association of Counties, Inc. Florida Association of County Attorneys, Inc., and Florida League of Cities, Inc.
Daniel C. Brown and Alan Harrison Brents of Katz, Kutter, Haigler, Alderman, Marks, Bryant & Yon, P.A., Tallahassee, Amici Curiae for Water Oak Management Corporation and John Richard Sellars.
Gloria Einstein, Jacksonville Area Legal Aid, Inc., Orange Park, and Alice M. Vickers, The Housing Workgroup of Florida Legal Services, Inc., Tallahassee, Amicus Curiae for Florida Legal Services, Inc.
Richard E. Gentry, Florida Home Builders Association, Tallahassee, and Robert M. *182 Rhodes and Victoria L. Weber of Steel, Hector & Davis, Tallahassee, Amicus Curiae for Florida Home Builders Association.
Larry E. Levy of the Law Offices of Larry E. Levy, Tallahassee, Amici Curiae for Quinton Dryden, George Alford, and Leon Nettles.
Toby Buel of Three Rivers Legal Services, Inc., Lake City, Amicus Curiae for Wiley Dorman Foxx.
OVERTON, Justice.
We have for review Sarasota County v. Sarasota Church of Christ, Inc., 641 So.2d 900 (Fla. 2d DCA 1994), in which the district court invalidated the special assessment at issue in this case. We have jurisdiction based on express and direct conflict with South Trail Fire Control District v. State, 273 So.2d 380 (Fla. 1973), and Madison County v. Foxx, 636 So.2d 39 (Fla.1st DCA 1994). Art. V, § 3(b)(3), Fla. Const. In summary, we conclude that the special assessment for stormwater services at issue in this case is a valid special assessment that is expressly authorized by the legislature because: (1) the assessment applies to the two classes of developed real property that contribute most of the stormwater runoff requiring treatment; (2) the assessment does not apply to undeveloped real property given that the undeveloped real property actually contributes to the absorption of stormwater runoff; (3) the properties assessed receive a special benefit from the funded stormwater services through the treatment of polluted stormwater contributed by those properties; and (4) the cost of those services has been properly apportioned. To require that the stormwater utility services be funded through a general ad valorem tax, as requested by the religious organizations who filed this action, would shift part of the cost of managing the stormwater drainage problems, which are created by developed real property, to undeveloped property owners who neither significantly contributed to nor caused the stormwater drainage problems. We quash the district court's decision.
The facts of this case are as follows. In 1989, Sarasota County (the County) adopted Ordinance No. 89-117, which created a stormwater environmental utility and imposed special assessments to fund the stormwater improvements and services. The ordinance was enacted in accordance with the policy directives of the Federal Clean Water Act[1] and the Florida Air and Water Pollution Control Act[2] (chapter 403, Florida Statutes (1987)). This stormwater ordinance imposed special assessments on all developed property but not on undeveloped property or property without physical improvements. After the County levied the assessment, a class action suit was filed against the County seeking to have the assessment declared to be an invalid tax.[3] The class consisted of religious organizations or entities owning developed real property in Sarasota County (the Churches) that are exempt from ad valorem taxes[4] but not from special assessments.
After a non-jury trial, the trial judge determined that stormwater services benefitted the community as a whole and that no evidence had been presented to show the services provided any direct or special benefit to the Churches. The trial judge then indicated that stormwater services should be funded through a tax rather than an assessment. Because the Churches are exempt from taxation, the trial judge found that the assessment could not be applied to them. As such, the trial judge invalidated the assessment as to the Churches and ordered a refund.
In making this ruling, the trial judge quoted from the circuit court opinion in Foxx v. Madison County, No. 90-161-CA, at 12 (3d Jud.Cir.Ct. 1990), for the proposition that stormwater charges "provide only a general benefit to the community and property *183 throughout the county as a matter of law as opposed to a special benefit to any particular property and accordingly the charges are not special assessments or assessments for special benefits as that term is used in the [Florida] Constitution." The circuit court's decision in Foxx was subsequently reversed by the First District Court of Appeal in Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994). In essence, the trial court found that the costs of stormwater utility services should never be paid for through a special assessment.
The County appealed the trial court's ruling, and the Second District Court of Appeal affirmed by simply adopting the trial court's order, with minor modifications, as its own.[5] As previously indicated, we accepted jurisdiction based on conflict with South Trail Fire Control District v. State, 273 So.2d 380 (Fla. 1973), and Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994).

DISTINGUISHING BETWEEN A SPECIAL ASSESSMENT AND A TAX
To properly evaluate the validity of the special assessment imposed by the County, we first address the differences between a special assessment and a tax. In City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992), Chief Justice Grimes explained that, although special assessments and taxes are both mandatory, a special assessment is distinct from a tax. Taxes are levied throughout a particular taxing unit for the general benefit of residents and property and are imposed under the theory that contributions must be made by the community at large to support the various functions of the government. Consequently, many citizens may pay a tax to support a particular government function from which they receive no direct benefit. Conversely, special assessments must confer a specific benefit on the land burdened by the assessment and are imposed under the theory that the portion of the community that bears the cost of the assessment will receive a special benefit from the improvement or service for which the assessment is levied. Id. at 29.
Although a special assessment is typically imposed for a specific purpose designed to benefit a specific area or class of property owners, this does not mean that the costs of services can never be levied throughout a community as a whole. Rather, the validity of a special assessment turns on the benefits received by the recipients of the services and the appropriate apportionment of the cost thereof. This is true regardless of whether the recipients of the benefits are spread throughout an entire community or are merely located in a limited, specified area within the community. See, e.g., South Trail (special assessment for fire services found to benefit all properties within the district).

THE APPROPRIATE STANDARD OF REVIEW
From the above analysis, we know that a valid special assessment must meet two requirements: (1) the property assessed must derive a special benefit from the service provided; and (2) the assessment must be fairly and reasonably apportioned according to the benefits received. City of Boca Raton, 595 So.2d at 30. These two prongs both constitute questions of fact for a legislative body rather than the judiciary. Id. at 30 (apportionment of benefits is a legislative function); South Trail, 273 So.2d at 383 (determination of special benefit is one of fact for legislative body; apportionment of the assessments is a legislative function). See *184 also Meyer v. City of Oakland Park, 219 So.2d 417 (Fla. 1969). We recognize, however, that cases addressing these issues sometimes blur the standard that is to be applied in determining whether the legislative conclusions regarding benefits and apportionment should be sustained. For instance, in South Trail, this Court stated that a legislative determination as to the existence of a special benefit should be upheld unless the determination is "palpably arbitrary or grossly unequal and confiscatory." 273 So.2d at 383 (quoting 48 Am.Jur. Special or Local Assessments § 29 at 588-89 (1943)). In City of Boca Raton and South Trail, we stated that a determination regarding the apportionment of benefits should be sustained "if reasonable people may differ" on the issue. To eliminate any confusion regarding what standard is to be applied, we hold that the standard is the same for both prongs; that is, the legislative determination as to the existence of special benefits and as to the apportionment of the costs of those benefits should be upheld unless the determination is arbitrary.

THE INSTANT SPECIAL ASSESSMENT
The County argues that the trial court substituted its judgment for that of the state and local legislative entities in determining that the stormwater utility services do not provide special benefits to the Churches and that those services cannot be funded by non-ad valorem assessments. Additionally, the County points out that, in this case, the Sarasota County Commission made specific findings regarding the benefits the stormwater services would provide. Further, the County stresses that the type of assessment at issue complies with the requirements of and is expressly authorized by the legislature in chapter 403 in addressing the problems of stormwater drainage and the contamination of Florida's fresh water supply.
The Churches, on the other hand, argue that we should uphold the trial court's ruling because "[n]o evidence was presented of any direct or special benefit to any of the church properties involved in this lawsuit" from the stormwater utility services. The Churches maintain that the trial court did not substitute its judgment for that of the government; it merely considered the declarations of the county and chapter 403 and found no evidence to support them as to this assessment. Additionally, the Churches point out that, even if the services do provide a special benefit to the church properties, chapter 403 anticipates that the fees for the services are to be assessed based on a reasonable relationship to the benefits received. The Churches assert that the method of apportionment used by the County is not reasonable. We disagree. As the following discussion indicates, we find that: (1) developed property, such as that owned by the Churches, receives the special benefit of the treatment of contaminated stormwater runoff caused primarily by the improvements on such property, and (2) the method of apportionment used by the County is proper because it requires the properties that create the contaminated stormwater runoff to pay for the treatment of that runoff.

The Question of a Special Benefit
As previously indicated, the Sarasota County Commission implemented this special assessment pursuant to the Federal Clean Water Act and chapter 403, which encompasses Florida's Air and Water Pollution Control Act (the "Act"). In adopting the Act, the Florida legislature specifically set forth the public policy behind this legislation, stating:
(1) The pollution of the air and waters of this state constitutes a menace to public health and welfare; creates public nuisances; is harmful to wildlife and fish and other aquatic life; and impairs domestic, agricultural, industrial, recreational, and other beneficial uses of air and water.
(2) It is declared to be the public policy of this state to conserve the waters of the state and to protect, maintain, and improve the quality thereof for public water supplies, for the propagation of wildlife and fish and other aquatic life, and for domestic, agricultural, industrial, recreational, and other beneficial uses and to provide that no wastes be discharged into any waters of the state without first being given the degree of treatment necessary to protect the beneficial uses of such water.

*185 § 403.021(1), (2), Fla. Stat. (1987) (emphasis added). In the Act the legislature also declared that the control, regulation, and abatement of the activities causing pollution of the waters of the state were to be increased to conserve natural resources; to ensure a continued safe environment; to ensure purity of air and water; to ensure domestic water supplies; to ensure protection and preservation of the public health, safety, welfare, and economic well-being; to ensure and provide for recreational and wildlife needs as the population increases and the economy expands; and to ensure a continuing growth of the economy and industrial development. § 403.021(6), Fla. Stat. (1987). To achieve these goals, chapter 403 specifically provides for, among other things, the construction of stormwater management systems, stating:
In addition to any other funding mechanism legally available to local government to construct, operate, or maintain stormwater systems, a county or municipality may:
....
(2) Create a stormwater facility benefit area. All property owners within said area may be assessed a per acreage fee to fund the construction, operation, maintenance, and administration of a public stormwater facility which serves the benefited area. Any facility benefit area containing different land uses which receive substantially different levels of stormwater benefits shall include facility benefit subareas which shall be assessed different per acreage fees from subarea to subarea based upon a reasonable relationship to benefits received.

§ 403.0893, Fla. Stat. (1987) (emphasis added).[6] Through the adoption of the Act and related provisions, the legislature determined that the creation, maintenance, and operation of stormwater facilities are necessary to prevent the pollution of the state's waters. The Act was also intended to implement and comply with Title 33 of the United States Code. See, e.g., 33 U.S.C. § 1281 (1995) (Water Pollution Prevention and Control) (waste treatment management plans shall provide for the confined disposal of pollutants so they will not migrate to cause water or other environmental pollution).
To comply with the directives of chapter 403, the County promulgated ordinance 89-117 and made the following findings in relation to the need for the stormwater services at issue. First, the County determined that stormwater services would be beneficial to the County. Second, the County concluded that the assessment was necessary for the funding of stormwater management in Sarasota County. Third, the County found that the costs of the services should be allocated in relationship to the respective stormwater contributions of individual parcels of property. To further this goal, the County determined that only developed properties were to be assessed because those are the properties with impervious surfaces that contribute the polluted stormwater to be treated by the system. Testimony at trial indicated that undeveloped properties were not assessed because undeveloped properties actually provide a benefit to the stormwater management system itself by assisting in the absorption of runoff created by developed properties.
As the above discussion indicates, both the legislature and the County have determined that the creation, maintenance, and operation of stormwater facilities benefit the individual properties that contribute to the stormwater problem caused by developed properties, particularly those with impervious surfaces, by assisting in the control, collection, and disposition and treatment of the stormwater within the areas for which the facilities provide service. We do not find that the declarations of the legislature and County regarding the benefits of stormwater facilities are arbitrary or unreasonable in any respect.
In reaching this conclusion, we emphasize two important factors. First, stormwater drainage services and the treatment of stormwater runoff from developed property are not special, locally initiated projects. Rather, they are, as discussed above, designed to implement national and state policies. *186 Second, developed property, which is the only property assessed under the County's ordinance, contributes almost all of the contaminated stormwater runoff that is to be treated by the stormwater facilities. Because this stormwater must be controlled and treated, developed properties are receiving the special benefit of control and treatment of their polluted runoff. This special benefit to developed property is similar to the special benefit received from the collection and disposal of solid waste. See, e.g., Charlotte County v. Fiske, 350 So.2d 578 (Fla. 2d DCA 1977); Gleason v. Dade County, 174 So.2d 466 (Fla. 3d DCA 1965).
Given the legislative declarations discussed above, it is clear that the Church properties receive a special benefit from the stormwater services at issue because a special benefit is received by all properties with impervious surfaces. Having determined that the Church properties receive a special benefit from the stormwater services, we turn to the issue of whether the costs of the stormwater services have been properly apportioned among the properties within the County.

The Question of Proper Apportionment
Under the ordinance at issue, the County has attempted to apportion the costs of the services based on the relative stormwater contributions of different types of developed property. Developed properties are classified for purposes of assessment into two major classes, residential and non-residential. Additionally, a subcategory of residential properties exists for smaller dwelling units such as condominium units and mobile homes. As indicated previously, undeveloped property is not assessed for stormwater services. Residential property owners pay a flat fee for the services based on the number of individual dwelling units on the property; non-residential developed property owners pay a fee based on a formula that is designed to create a direct relationship between the method of assessing a non-residential unit and the average residential unit.
This method for apportionment focuses on the projected stormwater discharge from developed parcels based on the amount of "horizontal impervious area" assumed for each parcel and divides the contributions based on varying property usage. In developing this method of apportionment, the County has followed the statutory directives set forth in section 403.0893(2). As noted earlier, that statute provides that all property owners within a stormwater facility benefit area may be assessed fees to support stormwater facilities. It further states that areas containing different land uses are to be assessed fees according to the benefits received. In summary, under the County's plan, developed properties are assessed fees differently depending on whether the property is residential or commercial. Undeveloped properties are not assessed for the services because, in general, they actually assist in the absorption of runoff. We conclude that this method of apportioning the costs of the stormwater services is not arbitrary and bears a reasonable relationship to the benefits received by the individual developed properties in the treatment and control of polluted stormwater runoff.
Notably, under the County's special assessment, the Churches and other owners of developed property are now required to contribute to the costs of the stormwater management facility based on their relative contribution of polluted stormwater runoff. Previously, the costs of stormwater services in the County were funded through a flat tax. Owners of both developed and undeveloped property paid for stormwater services without regard to the property's relative contribution of polluted runoff. Moreover, given that the Churches are exempt from taxation, they paid no money whatsoever towards the cost of the specific benefits received by these services. Although we do not find that the previous funding of stormwater services through taxation was inappropriate, we do find that the stormwater funding through the special assessment at issue complies with the dictates of chapter 403 and is a more appropriate funding mechanism under the intent of that statute.
Accordingly, we find that these stormwater utility services may be funded through special assessments, that the stormwater utility services provide a special benefit to developed properties within the service area of the stormwater facility, and that the method for *187 apportioning the fees for those services in this case is not arbitrary. Consequently, we quash the district court's decision and remand this case for further proceedings consistent with the dictates of this opinion.
It is so ordered.
SHAW, KOGAN and ANSTEAD, JJ., concur.
GRIMES, C.J., dissents with an opinion.
WELLS, J., dissents with an opinion, in which HARDING, J., concurs.
GRIMES, Chief Justice, dissenting.
I can understand why the county wishes to assess the developed properties which create most of the stormwater problems, but I cannot see how the developed properties derive a special benefit from the assessments which is greater than that realized by the undeveloped properties. Because the latter is essential to the legality of a special assessment, I respectfully dissent.
WELLS, Justice, dissenting.
I dissent because I cannot conclude that what Sarasota County levied for stormwater utility services was anything but a tax. The distinction between a tax and a special assessment must be respected scrupulously, not only to effect the exemptions to ad valorem taxes given by law to property used predominantly for educational, literary, scientific, religious or charitable purposes, see Art. VII, § 3(a), Fla. Const., but to effect the constitutional protections afforded to homesteads in this state. See Art. VII, § 6, Fla. Const. I would hold that Justice Thornal's sound opinion in Fisher v. Board of County Commissioners of Dade County, 84 So.2d 572 (Fla. 1956), controls.
When we subject the proposed "assessment" suggested by this record to the test announced by the precedents, we cannot avoid the conclusion that it is purely and simply an ad valorem tax and that it lacks all the elements of an "assessment for special benefits" within the contemplation of the constitutional provision that permits such a levy against homesteads although it is clothed with all of the elements of ad valorem taxation. In Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 907, 70 A.L.R. 156, we distinguished a "tax" from a "special assessment" in the following language:
"A `tax' is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A `special assessment' is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax, but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity, and may be determined legislatively or judicially. * * *"
Fisher, at 577-78. I find the statement in the majority opinion "this does not mean that the costs of services can never be levied throughout a community as a whole" is not only in direct conflict with the Fisher decision but makes the distinction between a special assessment and a tax illusory.
I also believe that the "Standard of Review" section in the majority opinion requires clarification. I am concerned that this section will be read as an abdication of this Court's role in making the fundamental legal determination of whether the taxing authority's levy is a special assessment or a tax. As we stated in South Trail Fire Control District v. State, 273 So.2d 380 (Fla. 1973):
The legislature may avail itself, for the purpose of such determination, [of the existence and extent of special benefit resulting from a public improvement] of any information which it deems appropriate and sufficient. But the power of the legislature in these matters is not unlimited. There is a point beyond which it cannot go, *188 even when it is exerting the power of taxation. It cannot by its fiat make a local improvement of that which in its essence is not such an improvement, and it cannot by its fiat make a special benefit to sustain a special assessment where there is no such special benefit.
Id. at 383 (quoting 48 Am.Jur., Special or Local Assessments, § 29 (1943)). It must be clear that this is the threshold determination in the analysis. If what is levied is a tax dressed as a special assessment, then the question of apportionment is never reached.
In accordance with the foregoing analysis, I do not agree that the ordinance in question is a special assessment. The ordinance states:

Section 2. Findings and Determinations.

It is hereby found, determined, and declared as follows:
(a) Those elements of the SYSTEM which provide for the collection, treatment, conveyance, and disposal of stormwater are of benefit and provide services to all real property within the County including property not presently served by the physical element thereof.
(b) The costs of operating and maintaining the SYSTEM and financing necessary repairs, replacements, improvements, and extensions thereof should be, to the extent practicable, allocated in relationship to the respective stormwater contributions of individual parcels of land.
(c) The stormwater management assessment defined herein is necessary and proper for funding of stormwater management within Sarasota County.
(d) The Board of County Commissioners, sitting as the Sarasota County Land Development Regulation Commission, has reviewed the proposed ordinance and has found that it is consistent with the Sarasota County Comprehensive Plan.
Such a county-wide scheme for improvements which "benefit and provide services to all real property within the County" (emphasis added) is a tax.
Chapter 403, Florida Statutes (1989), provided Sarasota County with a structure and a vehicle for the funding of stormwater utilities which the County can utilize without the constitutional infirmities of this ordinance.
HARDING, J., concurs.
NOTES
[1] Federal Clean Water Act of 1977 (codified as amended in scattered sections of 33 U.S.C.).
[2] Florida Air and Water Pollution Control Act of 1967 (codified as amended in scattered sections of chapter 403, Florida Statutes (1987)).
[3] The suit also contested the county's special assessment for fire and rescue services. That assessment was upheld and is not at issue in this appeal.
[4] Art. VII, § 3(a), Fla. Const.; §§ 196.012(1), 196.192(1), Fla. Stat. (1993).
[5] The district court simply quoted the trial court's judgment in adopting the judgment as its own. In two instances, however, the district court inserted bracketed references to the stormwater ordinance, which appear to limit the ruling to the specific ordinance in question. The bracketed references appear as follows:

Stormwater management services are, without question, both necessary and essential. However, such services [as planned and funded pursuant to Sarasota County Ordinance No. 89-117] benefit the community as a whole and provide no direct benefit, special benefit, increase in market value or proportionate benefit regarding the amount paid by any particular land owner....
....
Stormwater management services [as planned and funded by Sarasota County Ordinance No. 89-117] ... are not a valid special assessment... .
Sarasota County, 641 So.2d at 902-03.
[6] In 1989, section 403.0893 was amended to specifically provide that fees assessed for stormwater management systems could be collected through the non-ad valorem method provided for in chapter 197.