693 So.2d 546 (1997)
STATE of Florida, etc., Appellant,
v.
SARASOTA COUNTY, Florida, etc., Appellee.
No. 88872.
Supreme Court of Florida.
May 1, 1997.
*547 Earl Moreland, State Attorney and Henry E. Lee, Chief Assistant State Attorney, Sarasota, for Appellant.
Jorge L. Fernandez, County Attorney and Susan P. Schoettle, Assistant County Attorney, Sarasota, and George H. Nickerson, Jr., Harry F. Chiles and Robert L. Nabors of Nabors, Giblin & Nickerson, P.A., Tallahassee, for Appellee.
OVERTON, Justice.
We have for review the State's appeal of the trial court's judgment validating proposed bonds issued for the purpose of funding Sarasota County's stormwater management program. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. For the reasons expressed, we affirm the trial court's judgment.
The facts of this case are as follows. Pursuant to section 403.0891, Florida Statutes, Sarasota County has been developing and refining a stormwater management program since the late 1980s. In 1995, this Court issued Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180 (Fla.1995), approving a 1989 special assessment imposed to fund the stormwater management program. In 1994 and 1995, Sarasota County enacted three ordinances to refine how additional stormwater improvements would be implemented and assessed. Specifically, the ordinances extended the assessments for stormwater services to include all developed properties rather than just developed properties with impervious surfaces, given that all developed property contributes stormwater runoff. However, under the ordinances, developed properties with impervious surfaces are to be assessed at a higher rate than those without impervious surfaces because, of the two, properties with impervious surfaces contribute a greater portion of the runoff. Property in its natural state is considered undeveloped under the ordinance and is not subject to assessment. In 1996, the County issued a resolution declaring that it would issue bonds that would be repaid by the assessments to fund the initial costs of the improvements. The circuit court issued a final judgment approving the assessments and validating the bonds. In the final judgment, the trial judge found that the assessed properties would be specifically benefited by the stormwater management program and *548 that the assessment was fairly and reasonably apportioned.
The state attorney argues that the trial court erred in validating the bonds in this case because the special assessment that will be used to repay the bonds is actually a tax that requires voter approval. To be valid, a special assessment must meet two requirements: (1) the property assessed must receive a special benefit from the services provided; and (2) the assessment must be fairly and reasonably apportioned among the properties receiving the benefit. Sarasota County; City of Boca Raton v. State, 595 So.2d 25 (Fla.1992). The state attorney argues that the assessment at issue meets neither of these requirements.
In Sarasota County, we determined that property which contributes polluted stormwater runoff is specially benefited by the treatment of that runoff. Under the assessment at issue in that case, only developed properties with impervious surfaces were subject to the assessment because those properties contributed the majority of the stormwater runoff. Under the assessment at issue, Sarasota County has attempted to define more accurately the properties that contribute to the stormwater runoff. To that end, the County evaluated which geographic areas generate the stormwater burdens. The County then looked at the relative contribution of stormwater runoff produced by the properties within those areas. After finding that all developed property contributes to the stormwater runoff problem, the County determined that all developed properties are to be assessed, whether or not they contain impervious surfaces. Undeveloped property in its natural state is not assessed. Nevertheless, because properties with impervious surfaces contribute a greater portion of the runoff, they are assessed at a higher rate than properties without impervious surfaces. The County contends that this is a more accurate method of determining the special benefits received by the properties from the treatment of stormwater runoff than the method at issue in Sarasota County.[1]
Because we find competent, substantial evidence in the record to support the County's conclusions and because those conclusions of special benefit are not arbitrary, we find that the trial judge properly found the assessed properties to be specially benefited by the stormwater management program.
We also find that trial judge acted correctly in finding the assessment to be properly apportioned. As noted, properties with impervious surfaces contribute a greater portion of the runoff and are assessed at a higher rate than properties without impervious surfaces. Further, each parcel has been evaluated under a formula to determine the estimated contribution of stormwater runoff that is to be produced by the parcel and the parcels are assessed accordingly.
The state attorney, however, argues that the apportionment is arbitrary because the assessment is apportioned in such a way that property owners who pay the assessment will have their assessments increased to cover the cost of delinquent assessments. We disagree. Under the assessment at issue, if the proceeds collected for any year are insufficient due to delinquencies for the payment of the actual debt service and the County is required to withdraw funds from its debt service reserve, the amount withdrawn will be added to the amount assessed for the following year against all property within the assessed area. Any increase will be offset by the reduction of assessments in a future year, since the proceeds of delinquent assessments that are subsequently paid will be used to redeem bonds. As noted by the County, this approach actually lowers the assessed costs for all parcels by providing additional security for the bonds, which, in turn, results in lower interest rates. Consequently, we cannot say that the County acted arbitrarily in apportioning the assessment.
*549 Accordingly, we affirm the trial court's final judgment of validation.
It is so ordered.
KOGAN, C.J., and SHAW and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion, in which GRIMES and HARDING, JJ., concur.
WELLS, Justice, dissenting.
I dissent because this decision is a still deeper cut approved by this Court's majority in what has become a total evisceration of the ad valorem tax limitations of the Florida Constitution. I continue dissenting to the erroneous majority line of cases which began with Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180 (Fla.1995), continued into Harris v. Wilson, 693 So.2d 945 (Fla.1997), and which is now used to strip from electors who are owners of freeholds in Sarasota County their constitutionally mandated right to vote on this bond issue.
In rationalizing its decision in Sarasota Church of Christ, the majority found that the benefit requirement of a special assessment under City of Boca Raton v. State, 595 So.2d 25 (Fla.1992), could be found to exist because the assessment was upon developed properties. The majority stated:
Second, developed property, which is the only property assessed under the County's ordinance, contributes almost all of the contaminated stormwater runoff that is to be treated by the stormwater facilities. Because this stormwater must be controlled and treated, developed properties are receiving the special benefit of control and treatment of their polluted runoff.
Sarasota Church of Christ, 667 So.2d at 186. The fundamental premise was that impervious surfaces on this developed land caused the runoff, that this runoff had to be disposed of, and that, therefore, an assessment for the disposal should be made against the property causing the runoff. The structure to dispose of the runoff enhanced the value of that property.
Recognizing the hole in the constitutional dike, Sarasota County has merely expanded its definition of developed property. The testimony of J.P. Marchand, Sarasota County's Deputy Director of Transportation and formerly the County's Stormwater Environmental Utility Manager, is instructive:
Q. So you are familiar with the Sarasota Church of Christ case?
A. Yes, sir, I am.
....
Q. So undeveloped property was not assessed?
A. Well, properties withoutit depends on how you define "undeveloped property". Currently, native state properties that have not been developed whatsoever, are not assessed. But if you develop them as pasture or orchards or something like that, they are currently assessed; but in the original methodology, they weren't.
....
Q. Well, in the Church of Christ case, like you said, only assessed properties that had impervious surfaces.
A. That's correct.
Q. So if I owned a lot, I was not assessed.
A. A vacant lot was not assessed; that's correct.
Q. Range land or agricultural land was not assessed?
A. That's right.
Q. And now under this new plan they are assessed?
A. That's right.
As the impervious-surface theory has now disappeared, so has the distinction between a tax and a special assessment. It cannot be ignored that what the majority is approving in reality meets the definition of a taxnot a special assessment which even in the Sarasota Church of Christ decision of this Court was defined by the special benefit derived from the property upon which it was levied.
As I stated in my dissent in Harris, my overarching concern is that these decisions by the majority that ever-increasingly widen the hole in the constitutional dike foster government that is not straightforward or honest about its revenue-raising. Electors have every reason to be frustrated when their *550 constitutionally guaranteed protections are flooded out.
Furthermore, the majority's approval of the delinquency scheme of this ordinance is particularly offensive to both the concept of special assessments and to due process. Under this scheme, uncollected special assessments (i.e., delinquencies) which when aggregated for any year result in an amount which makes it necessary for the county to withdraw funds from its debt service reserve in order to make the actual debt service, the amount of the deficiency will be assessed against all property within the stormwater improvement area (which is, of course, all of Sarasota County). In effect, a property owner may be subjected to having to pay not only the owner's own assessment but an amount for those who do not for whatever reason pay their own assessment. It is understandable that this is a beneficial plan for obtaining a lower interest rate on the bond issue, but it is incomprehensible how such an additional assessment squares with the concept of a special benefit of a special assessment being a benefit which enhances the value of the property assessed. City of Boca Raton.
The County explains that this novel approach is really harmless because "any increase will be offset by the reduction of stormwater improvement assessments in a future year, since the proceeds of delinquent assessments that are subsequently paid will be used to redeem bonds." What happens if this added amount upon a piece of property is not paid? Can the lien for this delinquent amount be foreclosed, causing the property owner to lose the property based upon a delinquent payment by another property owner? Would the taking of that property in such a foreclosure meet due process? When the property is sold, does the new owner or old owner get the benefit of the reduction of payment in a make-up year? I cannot approve this delinquency scheme.
GRIMES and HARDING, JJ., concur.
NOTES
[1] Notably, the County has somewhat blurred the distinctions between the special benefit prong and the apportionment prong. This is because the determination of the amount the property owners are to be assessed goes to the question of proper apportionment rather than to the question of special benefit. A property is either benefited by the services or not; the determination of how much a property is benefited figures into the proper apportionment determination.