Mr. Patrick A. Barry Boca Raton Airport Authority 200 East Broward Boulevard Suite 1900 Fort Lauderdale, Florida 33301
Dear Mr. Barry:
On behalf of the Boca Raton Airport Authority, you ask the following question:
May the Boca Raton Airport Authority levy a special assessment on long-term commercial aviation leaseholds?
In sum:
The Boca Raton Airport Authority does not possess the authority to levy a special assessment on long-term commercial aviation leaseholds.
The Boca Raton Airport Authority (authority), in light of events of September 11, 2001, has expended funds to substantially increase security at the airport.[1] The authority proposes to impose a special assessment against its long-term aviation lease-holders who benefit from the increased security.
Created by Chapter 82-259, Laws of Florida, the Boca Raton Airport Authority is a body politic and corporate with the authority to have jurisdiction over the operation and maintenance of and improvements to the Boca Raton Airport. The authority is specifically empowered:
"(1) To enter into contracts and to sue and be sued in its own name; (2) To acquire real and personal property; (3) To let or lease the airport or any portion of the airport, including the buildings and hangars thereon, and to grant concessions upon such terms and conditions as it shall deem proper;
* * *
(5) To accept revenues from the operation of the airport and to accept gifts, grants, and other revenues; but the authority shall not have the power to levy or collect ad valorem taxes;
* * *
(11) To issue revenue bonds or refunding bonds of the authority to pay the cost of such acquisition, construction, reconstruction, improvement, or equipment; (12) To fix and revise from time to time and to collect rates, fees, and other charges for the use of or for the services and facilities furnished by or at the airport; and (13) To do all acts and things necessary or convenient to carry out the purposes of the authority."
As an administrative agency created by statute, the airport authority has no inherent or common-law powers. Instead, its powers are limited to those expressly granted by statute or necessarily implied therefrom.[2]
While an express power duly conferred may include the implied authority to use the means necessary to carry out the express power, this office has stated on numerous occasions that such implied power may not warrant the exercise of a substantive power not conferred.[3] Moreover, any reasonable doubt as to the lawful existence of a particular power sought to be exercised is to be resolved against such an exercise.[4]
You assert that the authority to collect rates, fees, and other charges for the use of or for the services and facilities furnished by or at the airport encompasses the imposition of special assessments.
In Attorney General Opinion 99-26, this office was asked whether the Ponte Vedra Beach Municipal Service District had the authority to levy special assessments pursuant to Chapter 170, Florida Statutes, to fund the construction of a sewer collection system. In that instance, the district was authorized to levy and assess ad valorem taxes and "to fix and collect rates, fees and other charges for the specialized public functions or services." While this office was asked to consider that under Chapter 170, Florida Statutes, improvements may be funded by special assessments, it was concluded that the service district was not a municipality that could avail itself of the authority extended under that act. Moreover, it was specifically noted that, unlike a municipality with home rule powers, a special district may not impose special assessments absent a grant of authority by the Legislature.[5]
This office noted that special assessments are a special charge on land based upon the fact that the land receives a special benefit in addition to the general benefits otherwise enjoyed by the public. They are enforced contributions by a property owner imposed on the basis that the assessed property derives some special or peculiar benefit in the enhancement of value as a result of the improvement or service funded by the proceeds from the assessment.[6]
The opinion further found that while the district was authorized to impose "other charges," the phrase "rates, fees, and other charges" referred to the imposition of fees or charges for the use of the facility or service, rather than special assessments.[7] It was concluded, therefore, that the district could not impose special assessments.
It has been suggested that as a special district, the airport authority is authorized to impose special assessments pursuant to section 189.4065, Florida Statutes. That section provides:
"Community development districts may and other special districts shall provide for the collection of annual non-ad valorem assessments in accordance with chapter 197 or monthly non-ad valorem assessments in accordance with chapter 170."
While this provision recognizes that special districts may have been granted the authority to impose special assessments, it merely provides a legislative direction that, in such cases, the assessments must be collected in the manner prescribed. No substantive power is conferred by section 189.4065, nor may this administrative direction as to how a substantive power is to be exercised be used to assume such power. Administrative agencies are constrained not to expand their authority beyond that provided in the statutory grant.[8]
As was similarly concluded in Attorney General Opinion 99-26, the authority to "collect rates, fees, and other charges for the use of orfor the services and facilities furnished by or at the Airport[,]" does not encompass the authority to impose special assessments. (e.s.) Accordingly, it is my opinion that absent specific legislative authorization, the Boca Raton Airport Authority may not impose a special assessment on long-term aviation leases for the provision of security services at the airport.
Sincerely,
Richard E. Doran Attorney General
RED/tls
[1] There is no question that the airport authority may properly spend authority funds for increased security at the airport.
[2] See, State ex rel. Greenberg v. Florida State Board of Dentistry,297 So.2d 628 (Fla. 1st DCA 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974).
[3] See, e.g., Ops. Att'y Gen. Fla. 78-114 (1978), 78-101 (1978), and 78-95 (1978). See also, Op. Att'y Gen. Fla. 90-64 (1990), in which this office concluded that a housing authority, created pursuant to Ch. 159, Fla. Stat., was not authorized to establish, wholly own and operate a state-chartered savings bank. And see, Florida State University v.Jenkins, 323 So.2d 597 (Fla. 1st DCA 1975) (implied power must be essential in order to carry out the expressly granted power or duty imposed); Gardinier, Inc. v. Florida Department of Pollution Control,300 So.2d 75 (Fla. 1st DCA 1974) (implied powers accorded administrative agencies must be indispensable to powers expressly granted).
[4] State ex rel. Greenburg v. Florida State Board of Dentistry,supra; City of Cape Coral v. GAC Utilities, Inc., of Florida, 281 So.2d 493
(Fla. 1973).
[5] Cf., City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992), in which the Court recognized that a municipality under its home rule powers could impose special assessments.
[6] See, Sarasota County v. Sarasota Church of Christ, Inc.,667 So.2d 180 (Fla. 1995) (valid special assessment must meet two requirements: property assessed must derive special benefit from the service provided; and assessment must be fairly and reasonably apportioned according to the benefits received).
[7] See, Loxahatchee River Environmental Control District v. SchoolBoard of Palm Beach County, 496 So.2d 930, 941 (Fla. 4th DCA 1986), recognizing that assessments are "separate and distinct from rates, fees and charges."
[8] See, State, Department of Environmental Regulation v. Falls ChaseSpecial Taxing District, 424 So.2d 787 (Fla. 1st DCA 1982), pet. for rev.den., 436 So.2d 98 (Fla. 1983); Seitz v. Duval County School Board,366 So.2d 119 (Fla. 1st DCA 1979); Department of Transportation v.James, 403 So.2d 1066 (Fla. 4th DCA 1981). See generally, 73 C.J.S. Public Administrative Law and Procedure ss. 52.a. (administrative officer or agency cannot add to own powers or jurisdiction, or by mere process of construction create a power not given).