# Supreme Court of Florida

_____

No. SC14-350
_____

**SCOTT MORRIS, et al.,**
Appellant,

vs.

**CITY OF CAPE CORAL, etc.,**
Appellee.

[May 7, 2015]

PERRY, J.

This case arises from a final judgment validating the City of Cape Coral's special assessment to provide fire protection services. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. The City of Cape Coral ("City" or "Cape Coral") passed an ordinance levying a special assessment against all real property in the city, both developed and undeveloped. The assessment has two tiers—one for all property and a second that applies only to developed property. Scott Morris and other property owners (collectively referred to as either "Morris" or "Property Owners") appeal the validation, arguing that the two-tier methodology is arbitrary, that the assessment violates existing law, that the trial court erred in denying their

motion for continuance, that the trial court improperly relied on facts not in evidence, and that their procedural due process rights were violated. Because we find that Cape Coral properly exercised its authority to issue a special assessment to fund fire protection services and that the assessment does not violate existing law, we affirm the order of validation.

## FACTS

In April 2013, Cape Coral authorized its city manager to hire Burton & Associates ("Burton") to prepare a study relating to a non-ad valorem assessment to fund the City's fire protection services. Burton presented its findings in a report dated June 10, 2013, which the City accepted. The report recommended a two-tier assessment, reasoning that all parcels in the city benefited from fire protection services and that developed property received an added benefit of protection from losses. Burton calculated the costs to maintain the facilities, equipment, and personnel necessary to provide fire protection services on a 24-hour-per-day, 365-days-per-year basis to all parcels in the city (exclusive of Emergency Medical Services costs). These costs represented seventy percent of the total fire protection services cost and were to be evenly distributed among all parcels. The costs for fuel, equipment maintenance, actual response to a fire, and other related operations were associated with protection from loss of structures.

At a June 10, 2013, public meeting, the City read and approved an Assessment Ordinance, which was again read and approved at the July 15, 2013, meeting. The City also passed a Note Ordinance at the same meeting. Thereafter, the Initial Assessment Resolution was adopted on July 29, 2013, and the Final Assessment Resolution was adopted on August 26, 2013. On August 28, 2013, the City filed its complaint to validate the debt under Chapter 75, Florida Statutes. The trial court issued an Order to Show Cause on September 11, 2013, which provided the time and date of the hearing. The Order to Show Cause was published in the local newspaper twenty days prior to the hearing and again the following week.

The trial court held the Show Cause hearing on October 7, 2013. Eight property owners appeared in opposition to the special assessment. The hearing was initially scheduled to last an hour, with each party given three minutes to present its argument. The trial court realized this was insufficient time and extended the hearing for two additional days.

On the second day, October 8, 2013, the Property Owners moved for a continuance in order to seek discovery. The trial court denied the motion; instead, the court permitted all parties to submit post-hearing legal memoranda which were due within twenty days of the Show Cause hearing. On the day the memoranda

were due, Talan Corporation, which did not appear at the Show Cause hearing, filed a Motion to Intervene and an objection to the validation.

The trial court held a hearing on Talan's motion on November 27, 2013, but did not reopen evidence. Talan argued that the City had miscalculated some parcels, and the City attempted to demonstrate that it had corrected the error. Ultimately, the trial court denied Talan's motion.

On December 11, 2013, the trial court entered its final judgment of validation. The judgment found, in pertinent part:

> (1) that the City of Cape Coral has the legal authority to issue the bond and assess properties within its jurisdiction as requested, (2) that the intended purpose of the bond is legal, to wit, it shall provide a continuation or provision of fire safety related service for all affected parcels, and (3) that the issuance of the bond and its related process comply with all essential elements and requirements of law, including reasonable apportionment.

Morris, joined by three other property owners, filed a Notice of Appeal with this Court on February 18, 2014.

**STANDARD OF REVIEW**

This Court's scope of review is limited to: (1) whether the municipality has the authority to issue the assessment; (2) whether the purpose of the assessment is legal; and (3) whether the assessment complies with the requirements of the law. See City of Winter Springs v. State, 776 So. 2d 255, 257 (Fla. 2001) (citations omitted).

- 4 -

"[A] valid special assessment must meet two requirements: (1) the property assessed must derive a special benefit from the service provided; and (2) the assessment must be fairly and reasonably apportioned according to the benefits received." Sarasota Cnty. v. Sarasota Church of Christ, 667 So. 2d 180, 183 (Fla. 1995) (citing City of Boca Raton v. State, 595 So. 2d 25, 30 (Fla. 1992)). "These two prongs both constitute questions of fact for a legislative body rather than the judiciary." Id. at 183. The standard to be applied to both prongs is that the legislative findings should be upheld unless the determination is arbitrary. Id. at 184. "Even an unpopular decision, when made correctly, must be upheld." Winter Springs, 776 So. 2d at 261.

## ANALYSIS

The Property Owners raise several issues, which at their core attack the correctness of the trial court's determination that the City's special assessment is valid. In response, the City argues that it passed the special assessment under its home rule authority and not chapter 170 of the Florida Statutes. Further, the City argues that the Property Owners have waived any right to challenge the trial court's determination that the City properly exercised its authority by failing to raise it as a discrete issue.

The authority to issue special assessments under a municipality's home rule powers was addressed by this Court in Boca Raton. In Boca Raton, after providing a history of home rule authority, we determined that

> a municipality may now exercise any governmental, corporate, or proprietary power for a municipal purpose except when expressly prohibited by law, and a municipality may legislate on any subject matter on which the legislature may act [with exceptions]. . . . Therefore, it would appear that the City of Boca Raton can levy its special assessment unless it is expressly prohibited . . . .

Boca Raton, 595 So. 2d at 28. Then, addressing whether chapter 170 expressly prohibited a municipality from exercising its home rule authority to issue a special assessment, we determined, "it is evident that chapter 170 is not the only method by which municipalities may levy a special assessment." Id. at 29. Accordingly, irrespective of whether the Property Owners have waived any right to raise the issue, there is no question that the City had the legal authority to levy the special assessment.

Further, we have previously upheld the validity of special assessments to fund fire protection services. See, e.g., Lake Cnty. v. Water Oak Mgmt. Corp., 695 So. 2d 667 (Fla. 1997); S. Trail Fire Control Dist., Sarasota Cnty. v. State, 273 So. 2d 380 (Fla. 1973); Fire Dist. No. 1 of Polk Cnty. v. Jenkins, 221 So. 2d 740 (Fla. 1969).

The Property Owners allege that the benefit from the fire protection services is a general one, and not a specific benefit. To support their argument, the

Property Owners rely on our decision in St. Lucie County — Fort Pierce Fire Prevention & Control District v. Higgs, 141 So. 2d 744 (Fla. 1962), for their contention that assessments levied on property for maintenance and operation of fire prevention services constitutes a tax. See Higgs, 141 So. 2d at 746. In Higgs, this Court agreed with the circuit court's finding that a particular assessment to fund fire services was invalid because "no parcel of land was specially or peculiarly benefited in proportion to its value . . . ." Id.

However, in 1997, we held that solid waste disposal and fire protection services funded by a special assessment did provide a special benefit. Water Oak Mgmt., 695 So. 2d at 668. Therein, the Fifth District Court of Appeal had found Lake County's assessment invalid under this Court's decision in Higgs because everyone in the county had access to fire protection services and so was not a special benefit. We found that the Fifth District had misconstrued our decision in Higgs, stating:

> In evaluating whether a special benefit is conferred to property by the services for which the assessment is imposed, the test is not whether the services confer a "unique" benefit or are different in type or degree from the benefit provided to the community as a whole; rather, the test is whether there is a "logical relationship" between the services provided and the benefit to real property.

Water Oak Mgmt., 695 So. 2d at 669 (citing Whisnant v. Stringfellow, 50 So. 2d 885 (Fla. 1951) (footnote omitted); Crowder v. Phillips, 1 So. 2d 629 (Fla. 1941)). Noting our decision in Fire District No. 1, we found that "fire protection services

- 7 -

do, at a minimum, specially benefit real property by providing for lower insurance premiums and enhancing the value of the property. Thus, there is a 'logical relationship' between the services provided and the benefit to real property." Water Oak Mgmt., 695 So. 2d at 669. We then clarified that our decision in Higgs turned not on the benefit prong, but on the apportionment prong. Id. at 670.

In this case, Cape Coral has established that the assessed property receives a special benefit. In the Assessment Ordinance, the City made the following statement:

> **Legislative Determinations of Special Benefit.** It is hereby ascertained and declared that the Fire Protection services, facilities, and programs provide a special benefit to property because Fire Protection services possess a logical relationship to the use and enjoyment of property by: (1) protecting the value and integrity of the improvements, structures, and unimproved land through the provision of available Fire Protection services; (2) protecting the life and safety of intended occupants in the use and enjoyment of property; (3) lowering the cost of fire insurance by the presence of a professional and comprehensive Fire Protection program within the City and limiting the potential financial liability for uninsured or underinsured properties; and (4) containing and extinguishing the spread of fire incidents occurring on property, including but not limited to unimproved property, with the potential to spread and endanger the structures and occupants of property.

Likewise, the experts retained by Cape Coral determined that all parcels in the City received a special benefit from the City's fire protection services and facilities. In its report, Burton reasoned that the response-readiness of the fire department benefitted all parcels by raising property value and marketability, limiting liability

by containing fire and preventing its spread to other parcels, ensuring immediate response, and heightening the use and enjoyment of all properties. These findings are similar to the reasons we accepted in Water Oak Mgmt. Water Oak Mgmt., 695 So. 2d at 669 ("[F]ire protection services do, at a minimum, specially benefit real property by providing for lower insurance premiums and enhancing the value of the property."). Thus, the facts of the present case lie squarely within the facts of Water Oak Mgmt. Only the methodology differs.

The Property Owners question the validity of Tier 1 and Tier 2 of the assessment. In short, the Property Owners argue that the assessment is not properly apportioned. We have instructed:

> To be legal, special assessments must be directly proportionate to the benefits to the property upon which they are levied and this may not be inferred from a situation where all property in a district is assessed for the benefit of the whole on the theory that individual parcels are peculiarly benefited in the ratio that the assessed value of each bears to the total value of all property in the district.

Higgs, 141 So. 2d at 746. In other words, the assessment cannot be in excess of the proportional benefits. S. Trail Fire Control Dist., 273 So. 2d at 384. And, the proportional benefits cannot be calculated by the ratio of the value of the assessed property against the value of all property. See Water Oak Mgmt., 695 So. 2d at 670 (explaining that the decision in Higgs turned on whether the land was benefitted in proportion to its value, stating: "the assessment in that case was actually a tax because it had been wrongfully apportioned based on the assessed

- 9 -

value of the properties rather than on the special benefits provided to the properties."). However, this Court has also held that "[t]he mere fact that some property is assessed on an area basis, and other property is assessed at a flat rate basis, does not in itself establish the invalidity of the special assessment." S. Trail Fire Control Dist., 273 So. 2d at 384.

To this end, the Property Owners allege that Tier 1 of the assessment is invalid because it equally assesses all property and therefore is not proportional. The Property Owners further argue that Tier 2 of the assessment, being based on the value of any structures and improvements on a parcel, amounts to nothing more than a tax. In other words, the Property Owners allege that the City's chosen methodology is arbitrary and does not properly apportion the costs. We find that the City's methodology is not arbitrary. See Sarasota Church of Christ, 667 So. 2d at 184 ("[L]egislative determination as to the existence of special benefits and as to the apportionment of the costs of those benefits should be upheld unless the determination is arbitrary.").

In the present case, the City contracted for a study to determine the best method to apportion the costs of fire services. By adopting the approach recommended in the study, the City has attempted to apportion the costs based on both the general availability of fire protection services to everyone (Tier 1) and the additional benefit of improved property owners of protecting structures from

damage (Tier 2). We have not previously addressed a bifurcated approach to fire service assessments. However, this sort of approach closely resembles the approach we approved in Sarasota Church of Christ.

In Sarasota Church of Christ, we considered the validity of special assessments against developed property for stormwater management services. There, undeveloped property was not assessed at all, residential property was assessed at a flat rate per number of individual dwelling units on the property, and non-residential property was assessed based on a formula. Specifically, "[t]his method for apportionment focuse[d] on the projected stormwater discharge from developed parcels based on the amount of 'horizontal impervious area' assumed for each parcel and divide[d] the contributions based on varying property usage." This Court held that "this method of apportioning the costs of the stormwater services is not arbitrary and bears a reasonable relationship to the benefits received by the individual developed properties . . . ." Sarasota Church of Christ, 667 So. 2d at 186.

The Tier 2 formula for improved properties is akin to the formula in Sarasota Church of Christ for determining the assessment against commercial property. Like that of Sarasota County, the City's methodology reasonably relates to the additional benefits received by improved properties. The formula contemplates that each improved parcel benefits differently because the cost to replace the

- 11 -

respective structure differs. The use of the property appraiser's structure value is reasonable because the property appraiser is statutorily required to use a replacement cost to determine this value. See § 193.011(5), Fla. Stat. (2014). We find that this is a reasonable approach to apportionment and not arbitrary.

As we have stated, "[t]he manner of the assessment is immaterial and may vary within the district, as long as the amount of the assessment for each tract is not in excess of the proportional benefits as compared to other assessments on other tracts." Boca Raton, 595 So. 2d at 31 (quoting S. Trail Fire Control Dist., 273 So. 2d at 384). In fact, we have acknowledged:

> No system of appraising benefits or assessing costs has yet been devised that is not open to some criticism. None have attained the ideal position of exact equality, but, if assessing boards would bear in mind that benefits actually accruing to the property improved in addition to those received by the community at large must control both as to the benefits prorated and the limit of assessments for cost of improvement, the system employed would be as near the ideal as it is humanly possible to make it.

Id. (quoting City of Ft. Myers v. State, 117 So. 97, 104 (Fla. 1928)). The methodology at issue here was found by the trial court to be "valid, non-arbitrary and considered established insofar as the [opposing parties] failed to present any competent, persuasive evidence to dispute or call into reasonable question [the court's] findings and determinations." A review of the record supports the trial court's determination.

Additionally, we find that the Property Owners' additional arguments on appeal are without merit. Whether to grant a continuance is within the discretion of the trial judge. Strand v. Escambia Cnty., 992 So. 2d 150, 154 (Fla. 2008). The Property Owners have not established that the trial court abused its discretion.

Likewise, the Property Owners have failed to establish that they were denied procedural due process. The Property Owners have not alleged that the City failed to provide notice or denied the Property Owners a meaningful opportunity to be heard. In addition to the validation hearing, the City publicly discussed the special assessment at four public meetings, for which notice was provided. At the validation hearing, the trial court extended the time for the Property Owners to voice their concerns. Based on the foregoing, the Property Owners have not established that they were denied procedural due process.

Lastly, the Property Owners contend that the trial court improperly considered and relied on Resolution 56-13 (November 25, 2013). Specifically, the Property Owners point to paragraphs 31-33 and 37 of the Final Judgment. Nothing in these findings relates to the validity of the Special Assessment. Rather, it appears that the trial court merely noted that the errors in valuation had been corrected and did not invalidate the apportionment methodology. Valuation is not a part of the trial court's review for validity. Accordingly, even if the court

improperly considered the City's updated valuation, it does not affect the outcome of the validation proceedings.

## CONCLUSION

For the foregoing reasons, we affirm the final judgment of validation.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and POLSTON, JJ., concur.
CANADY, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Lee County – Bond Validations
    Keith R. Kyle, Judge – Case No. 362013CA002406A001CH

Scott Morris of the Morris Law Firm, P.A., Cape Coral, Florida,

    for Appellants

Christopher Benigno Roe and Elizabeth Wilson Neiberger of Bryant Miller Olive P.A., Tallahassee, Florida; Susan Hamilton Churuit of Bryant Miller Olive P.A., Tampa, Florida; and Dolores D. Menendez, City Attorney, Cape Coral, Florida,

    for Appellee

Robert Keith Robinson of Nelson Hesse, LLP, Sarasota, Florida

    for Amicus Curiae City of North Port, Florida

Anthony Angelo Garganese and Erin Jane O'Leary of Brown, Garganese, Weiss & D'Agresta, P.A., Orlando, Florida,

    for Amici Curiae Florida League of Cities and City of Cocoa, Florida