LEWIS, J.,
concurring in result only.
I recognize that the majority is correct in its determination as to what the Legislature has the power and'authority to'accomplish. Nevertheless, due to the limited review of the Court in bond validation proceedings, and because I have great concern with regard to the far-reaching' impact of today’s decision, I concur in result only. This government plan utilizes bonds to obtain funds for the purpose of providing what appears to. be individual home improvement loans to private property *1270 owners to finance certain qualifying improvements to their homes — specifically, improvements that involve energy conservation and efficiency, renewable energy, and wind resistance (i.e., hurricane mitigation). See § 163.08(2)(b), Fla. Stat. (2014). The loans are then to be repaid through the levy of “special assessments” on the improved properties. I do not dispute that local governments can impose special assessments upon properties that receive a specific benefit from general improvements or services; however, there is no precedent in Florida that expressly holds a special assessment can be levied upon an individual property under circumstances such as these.
In Sarasota County v. Sarasota Church of Christ, 667 So.2d 180 (Fla.1995), this Court explained that
special assessments must confer a specific benefit on the land burdened by the assessment and are imposed under the theory that the portion of the community that bears the cost of the assessment will receive a special benefit from the improvement or service for which the assessment is levied.
Although a special assessment is typically imposed for a specific purpose designed to benefit a specific area or class of property owners, this does not mean that the costs of services can never be levied throughout a community as a whole. . Rather, the validity of a special assessment turns on the benefits received by the recipients of the services and the appropriate apportionment of the cost thereof. This is true regardless of whether the recipients of the benefits are spread throughout an entire community or are merely located in a limited, specified area within the community.
Id. at 183 (citation omitted). Consistent with this description, special assessments have been historically and exclusively directed toward improvements or services that benefit a general area of real property within communities or specific areas. See, e.g., Morris v. City of Cape Coral, 163 So.3d 1174, 1177 (Fla.2015) (special assessment for fire protection services levied on all real property); Donovan v. Okaloosa Cnty., 82 So.3d 801, 805 (Fla.2012) (special assessment for beach restoration and ren-ourishment levied on properties within a Municipal Service Benefit Unit); Citizens Advocating Responsible Envtl. Sols., Inc. v. City of Marco Island, 959 So.2d 203, 204-05 (Fla.2007) (special assessment for expansion of wastewater collection and treatment system imposed on users not served by the current system); Sarasota Church of Christ, 667 So.2d at 182 (special assessment for stormwater improvements and services imposed on all developed property); Workman Enters., Inc. v. Hernando Cnty., 790 So.2d 598, 600 (Fla. 5th DCA 2001) (special assessment for fire and rescue services levied on the five categories of property within a county district);[4] see also 70C Am.Jur.2d Special or Local Assessments § 1 (2011) (“Special or local assessments ... are charges imposed on property owners within a limited area to help pay the cost of a local improvement which specially benefits property within that area.”). In my view, it is not a proper use of special assessments, as they have been described by this Court and are commonly understood, to repay funds that were loaned for home improvements to only a specific individual home.
Moreover, because special assessments are to be fairly and reasonably apportioned in accordance with the benefits re *1271 ceived, Sarasota Church of Christ, 667 So.2d at 183, it is implicit that more than one property will benefit from the improvement. See Black’s Law Dictionary 121 (10th ed. 2014) (defining apportionment as “Division into proportionate shares; esp., the division of rights and liabilities among two or more persons or entities.” (emphasis supplied)). For a single property to be subject to one hundred percent of a special assessment because it is the only property that benefitted from a qualifying improvement is completely inconsistent with the concept of apportionment and how special assessments have been traditionally applied.
The decision of the Legislature to allow what are essentially home improvement loans to be repaid through special assessments presents significant ramifications because these loans receive priority over existing mortgages, which I find troublesome. See § 170.09, Fla. Stat. (2014) (noting that special assessments “shall remain liens, coequal with the lien of all state, county, district, and municipal taxes, superior in dignity to all other liens, titles, and claims, until paid.... ” (emphasis supplied)); compare Gailey v. Robertson, 98 Fla. 176, 123 So. 692, 692-93 (1929) (holding that a lien on property that was the result of a special assessment took priority over a preexisting mortgage, and rejecting claim that the result constituted an impairment of the vested right of the mortgagee) with First Nationwide Mortg. Corp. v. Brantley, 851 So.2d 885, 887 (Fla. 4th DCA 2003) (holding that a city lien arising from a loan for home repairs was not superior to a preexisting mortgage because it was not the result of municipal services, a special assessment, or any type of lien covered by the city code of ordinances). I am inclined to agree with the specially concurring opinion in Brantley that to allow individual home repair loans to take precedent over preexisting mortgages would present significant constitutional concerns. See 851 So.2d at 887-88 (Fleet, A.J., specially concurring) (“To accept the proposition that governmental assistance to an individual, natural or corporate, for residential improvement automatically becomes superior in dignity to a previously recorded mortgage simply fails to pass constitutional muster.”).
As explained by the Court of Appeals for the Eleventh Circuit, mortgage holders possess a constitutionally protected property right:
In Sarasota County v. Andrews, 573 So.2d 113 (Fla. 2d DCA 1991), the court found that a county’s attempt to assert that a lien created by an ordinance was superior in right to a prior recorded mortgage, was a substantial impairment of the first mortgage lien for federal and state constitutional purposes. Id. at 115. Although Sarasota was decided under a contract impairment analysis, it nevertheless stands for the proposition that a mortgagee, who is in essence a party to a security contract, has a property right in preservation of its mortgage interest. See also Mailman Development Corp. v. Segall, 403 So.2d 1137, 1138 (Fla. 4th DCA 1981) (holding that a “mortgagee should not be required to accept a substituted security interest since a mortgagee lien is a property right.... ”).
Moreover, Florida law gives a mortgagee the right to foreclose and refore-close its liens. Fla. Stat. § 697.01 (1993). Therefore, a mortgage is a cause of action creating a lien on property. See United of Florida, Inc. v. Illini Federal Savings & Loan Association, 341 So.2d 793, 794 (Fla. 2d DCA 1977). The Supreme Court has specifically held that “a cause of action is a species of property protected by the Fourteenth *1272 Amendment’s Due Process Clause.” Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).
Zipperer v. City of Fort Myers, 41 F.3d 619, 623 (11th Cir.1995). Yet, the bonds under consideration can be issued, and special assessments levied by local governments, without input from mortgage holders because the majority has determined that they do not have standing to participate in these proceedings.
In the probate .context, the United States Supreme Court has held that a nonclaim statute that only required notice by publication (which is the only notice to mortgagees here) was insufficient to protect the property interest of a creditor under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 481, 484-85, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Instead, the Supreme Court determined that where the protected property interest of a known or reasonably ascertainable creditor will be adversely impacted by state action, due process requires actual notice of the government action that will impact a property interest. Id. at 487-88, 491, 108 S.Ct. 1340. The general notice that was condemned by the Supreme Court in Pope is analogous to what has occurred here with regard to the special assessments, which clearly qualify as state action. The property interests of mortgage holders will unquestionably be adversely impacted due to the priority given to special assessments- under Florida law, but those mortgage holders receive no actual notice of the bond validation proceedings and lack standing to challenge the designation of the loan repayments as superior to the property interests of prior mortgage holders. The rights of mortgage holders are also adversely impacted by the legislation after a property owner elects to participate in this loan process.
You may call a donkey a thoroughbred, but that donkey is going to remain a donkey. These home improvement projects stand out on an island by themselves and, although they are very well intended, constitute an unprecedented expansion of the concept of “special assessments.” It may be commendable for the government to assist citizens with- renovations to their homes. However, by affirming the amended final judgment of the circuit court, it seems there will be no limit to the purposes for which special assessments can be levied. Future expansions will only further minimize and diminish ■ mortgage holders’ constitutional property rights.[5] These issues, have not been fully briefed, nor have they been fully argued.
Despite my deep concerns, I recognize that it appears that precedent does not expressly address the use of special assessments in this fashion, and the decision as to what is to be labelled a “special assessment” may fall within the discretion of the Legislature. However, based upon the troublesome and far-reaching implications of this case, I concur in result only.

. This Court has also indicated that a special assessment can be levied throughout an entire taxing district, provided it confers a special benefit on the properties assessed and is properly apportioned. See Harris v. Wilson, 693 So.2d 945, 947 (Fla.1997).

. I do recognize some limitations to the concerns that I have expressed. If, for example, a property presents a public nuisance, and the local government levies a special assessment to correct or remove it for the benefit of a community or a specific area, it would be logical for such an assessment to take priority over a mortgage.